R. L. LASSITER ET AL. v. BOARD OF COMMISSIONERS OF WAKE COUNTY.

(Filed 15 October, 1924.)

**1. Roads and Highways—State Highway Commission—County Commissioners—Contracts.**

The State Highway Commission and the county boards of commissioners are alike agencies of the State for the building and maintenance of public roads, with statutory differences as to national and county highways, etc., and may contract with each other relative thereto in accordance with provisions stated by the statutes on the subject.

**2. Same—Necessary Expenses—Contribution of Moneys by Counties.**

Where there are two routes by which the State Highway Commission may construct and maintain a national highway from a county seat, and by one of them largely traveled it would relieve the county of great cost in maintenance, and in the straightness of curves relieve the road in certain places of dangerous conditions, and also large expenditure for a bridge, etc., if such route were accepted and constructed and maintained by the State Highway Commission, it is within the discretionary powers conferred by the statute for the county to pay from its general fund, as a necessary county expense, the larger cost of this route over the other upon an agreement made to that effect.

**3. Same—Constitutional Law—Statutes—Necessary Expenses.**

The building and maintenance of public roads of a county is a necessary county expense, and being authorized by statute the question is not required by the Constitution to be submitted to the voters for approval. Const., Art. VII, sec. 2; C. S., 1297 (18), (19) ; C. S., 1325.

**4. Same—Repealing Acts.**

Chapter 189, Laws 1919, brought forward in C. S., 3580-3593, is repealed by the laws of 1921 in so far as the former conflict with the latter act, and under the latter power is conferred on the State Highway Commission to take over county highways as a part of the national highway system of roads upon such terms and agreements with the county commissioners as may be made by them as authorized by the act of 1921.

CIVIL ACTION, heard on return of preliminary restraining order, on 19 June, 1924, before *Grady, J.,* holding the courts of Seventh District.

The action is by certain citizens and taxpayers of Wake County to restrain defendant board from contributing $41,500 towards the construction or renewal and repair of the road leading from Raleigh east through the county of Wake, being known in time past as the old Tarboro Road and designated also locally and in the record as the Milburnie Road. On the hearing the court entered judgment as follows:

This cause coming on to be heard upon complaint, answer and affidavits, and upon plaintiffs' prayer for an injunction until the final hearing enjoining and restraining defendants from contributing $41,500.00 toward the construction of what is described in the pleadings as the Milburnie Road; and the court having given a full hearing, and being of the opinion, upon the admitted facts in the case, that plaintiffs are not entitled to an injunction to the hearing, and not entitled to the relief prayed for in their complaint:

Now, therefore, it is ordered, decreed and adjudged by the court that the preliminary restraining order hereinbefore granted be and the same is hereby dissolved, and that the action be dismissed, the injunctive relief being the basis of this action.

It is further adjudged that defendants recover of the plaintiffs and the surety on their prosecution bond the costs of the action, to be taxed by the clerk of the court.

This is the final judgment in this action.

HENRY A. GRADY, *Judge Presiding.*

Plaintiffs, having duly excepted, appealed.

*R. N. Simms for plaintiffs.*
*P. J. Olive and Pou & Pou for defendants.*

HOKE, C. J. In the location of route No. 90 of the State highway system, running from Raleigh through Wake County and into the eastern section of the State, there were two routes suggested and available between Raleigh and the town of Wendell, about 18 miles east—one

known locally as the Milburnie route, and the other the Pool route—both ·being public highways, for the repair and maintenance of which the county of Wake is responsible. From a perusal of the pleadings and affidavits it reasonably and satisfactorily appears that while the two routes are about the same distance, the upkeep and maintenance of the Milburnie Road is a much greater burden to the county of Wake, and its· present condition is such that extensive expenditures are presently desirable, if not necessary, to put said way in a safe and proper condition for travel. Among the changes considered presently desirable and necessary in the near future were the removal of some dangerous curves in the road, the substitution of substantial and adequate bridges over Neuse River and Crabtree Creek, and also the removal of a dangerous grade crossing over the Norfolk Southern Railway; that the adoption of the' upper or Milburnie route, and of making the same a part of the State highway system, would relieve the county of the large expenditures required by the above alterations, as well as from the exacting burden of maintaining the road in the future. It further appears, by official survey and estimates, that the cost of the Milburnie route will exceed that of the Pool route by the amount of $41,500.00, but that the new and commodious hard-surface road to be built by the Highway Commission on the former would be of greater service to much the larger number of the citizens of Wake County than on the other. In the presence of these conditions, the State Highway Commission adopted the Milburnie or upper road from Raleigh to Wendell as part of route 90 of the State highway system, on defendant board agreeing to contribute the $41,500.00 as a proper liability and proportion of the cost of construction and repair to be borne by the county of Wake. It is objected for appellants that the commissioners are without power to make the contribution, same not being for a necessary expense of the county, and no vote of the people having been taken thereon; but, in our opinion, the objection cannot be sustained. Unless otherwise directed by express legislation, the supervision and control of county roads and responsibility for their construction and maintenance is placed with the board of commissioners. It is so provided in our Constitution and emphasized by the general legislation on the subject (Constitution, Art. VII, sec. 2; C. S., 1297, subsecs. 18-19); and in C. S., 1325, these boards are "invested with full power to_ direct the application of all moneys arising by virtue of (this chapter 24) for the purposes therein mentioned, and to any other good and necessary purpose for the use of the county." So all-pervading and insistent is the power of county commissioners on 'the question of public roads that, although special legislation may disclose a purpose to supervise and control the matter of roads by other boards, as the township

system, unless clearly forbidden by such legislation, the county commissioners could lend proper aid to this effort by appropriating general county moneys for the purpose. *Bunch v. Comrs.,* 159 N. C., p. 335. And it has also been uniformly held that in the exercise of these powers the construction and repair of the public roads are a necessary expense, not requiring the approval of a popular vote. *Woodall v. Highway Commission,* 176 N. C., 377; *Davis v. Lenoir,* 178 N. C., 668; *Hargrave v. Comrs.,* 168 N. C., 626; *Murphy v. Webb,* 156 N. C., 402. It is urged against the exercise of such power in the present instance that when the Milburnie Road is taken over by the Highway Commission, such commission is given full control, and it is then no longer a county road; but, as shown in the evidence, this was a public road, a part of the county system, and for the repair and upkeep of which the county was liable. Unless and until it is taken over by the State Commission, it constitutes a county charge. And we see no reason why, in the exercise of their powers concerning it, the county commissioners may not provide by contract a way for the continued and reliable upkeep by the State Commission, and thus relieve the county of the incidental burdens. True, we would be slow to hold that county commissioners could make an arrangement with some nonofficial board by which they would undertake to absolve themselves from their governmental duties in the matter, but this present arrangement is with a governmental body, also under the control of the State, and which, by the acts of its creation, is given full power to take over roads and stipulate for the terms in which they will do it. Chapter 2, Laws 1921, under which the Highway Commission is operating, and entitled "An act to provide for the construction and maintenance of a State system of hard-surfaced and other dependable roads in the State," etc., shows a purpose throughout to encourage coöperation between the State Commission and the county authorities. In section 18 power is given to make contracts with county commissioners and road-governing bodies for hiring convicts and procuring material and for constructing the highways. In section 14 county authorities are empowered to build hard-surfaced roads under specifications of the highway commissioners, who may contract to reimburse the county for the expense. And in section 10, subsection c, it is authorized to acquire, by gift, purchase or otherwise, *any road* or *highway* that may be necessary for the State system, under a proviso that the State Commission may not pay out anything to counties for existent roads; and in subsection g the commission is empowered "to assume full and exclusive responsibility for the maintenance of all roads, other than streets in towns and cities, forming a part of the State highway."

These municipal boards, as we have uniformly held, are, in matters governmental, mere agencies of the State for the convenience of local

administration in designated portions of the State territory; and in the exercise of their ordinary governmental function they are subject to almost unlimited legislative control, except when restrained by constitutional provisions. Under the Highway Act, it was perfectly competent, therefore, for the Legislature to authorize, as they have done, the acquisition of these roads, and by the same token the county board is allowed to contract with them for its purchase, maintenance and upkeep of the road for which they were then responsible. Granted the power, it is fully established that its discretionary exercise is for the commissioners, and the courts are not permitted to interfere unless their action is so unreasonable as to amount to an oppressive and manifest abuse. *Peters v. Highway Commission,* 184 N. C., p. 30; *Lee v. Waynesville,* 184 N. C., p. 565; *Newton v. School Committee,* 158 N. C., p. 186-188; *Ward v. Comrs.,* 146 N. C., p. 534; *Brodnax v. Groom,* 64 N. C., p. 244. And not only is there no abuse of power disclosed in this record, but by the decided weight of the evidence the commissioners have made an advantageous contract, providing for the county a fine highway and relieving it of the burden and expense of further keeping up the road. We have not been inadvertent to the position of appellee that ample power to make this contract is conferred. C. S., 3580 to 3593, etc. These sections, however, are taken from chapter 189, Laws 1919, the first Highway Act, and are, to a large extent, repealed by the subsequent or fuller Highway Act of 1921, chapter 2. Not only does this appear from the fact that the later act is evidently intended to cover the entire subject dealt with in the Laws of 1919, but the act of 1921, in section 1 and in form, provides that this chapter 189, Public Laws 1919, be amended so as hereafter to "read as follows," and when an amendment is couched in these terms it will work a repeal of all the former act not contained in the second. *Howard v. Hulbert,* 63 Kan., 793; *S. v. Andrews,* 20 Tex., 230; *S. v. Ingersoll,* 17 Wis., 631; *Columbia Wire Co. v. Boyce,* 104 Fed., 172; *Rowan v. Ide,* 107 Fed., 161. As we have endeavored to show, however, there is ample power to make this conferred by chapter 2, Laws 1921, on both the highway commission and the board of county commissioners, and, having the power, there is no evidence that its exercise in the present instance, in any aspect of the testimony, can be regarded as an abuse of discretion. Ordinarily, in hearings of this character the power of his Honor is restricted to a present dissolution of the restraining order, leaving the ultimate determination of the issuable facts for the jury, but, on the admissions and evidence, there being no cause of action stated, we approve the ruling dismissing the suit.

Affirmed.