T. C. YOUNG v. THE BOARD OF COMMISSIONERS OF JOHNSTON COUNTY, THE STATE HIGHWAY COMMISSION, and FRANK PAGE.

(Filed 24 June, 1925.)

**Counties—State Highway Commission — Statutes — Loans—Contracts— Consideration—Questions of Law.**

In contemplation of the statute, the State Highway Commission is entrusted to construct and maintain a system of public highways and to contract in reference thereto, and a contract made between this board and the board of commissioners of a county wherein the latter is to advance certain moneys as a proportionate expense in the former's taking over and maintaining a particular highway to be repaid by the State Highway Commission from its funds is a valid and legal contract, supported by a sufficient consideration.

APPEAL by defendant from order of *Daniels, J.*, 2 June, 1925, of WAKE.

The defendants appealed from an order of *Daniels, J.*, enjoining them from carrying into effect a contract executed on 14 April, 1925, by and between the county commissioners and the highway commission. By the terms of this contract, the commissioners of Johnston County, in consideration of securing the construction of Route 22 (a part of the highway system extending through the county from the Wilson to the Harnett line), earlier than it would be possible to have it built without an advancement of funds by the county, agreed to lend the highway commission $500,000 to be used as a part of the money necessary for the construction of the road, and to have this amount available and subject to draft as soon as the highway commission should indicate its readiness to let out the work. The highway commission thereby obligated itself to proceed as rapidly as practicable with the preparation of the plans and specifications for concrete pavement and to do the work as rapidly as practicable, supplementing the sum advanced by the county with the funds of the highway commission, and, further, to repay to Johnston County, without interest, out of the funds allocated to the county from the proceeds of bond issues thereafter authorized by the Legislature, or out of other road construction funds, to the extent that such funds might be sufficient therefor, the net sum of $500,000, or so much thereof as might be advanced by the county to the highway commission.

On 30 May, 1925, the plaintiff brought suit, and in his complaint, after setting out the contract, alleged that the county commissioners were preparing to sell notes or bonds of the county in the sum of

$500,000 with a view to turning the amount over to the highway commission; that the highway commission had surveyed the route, was preparing plans and specifications, and intended to begin work on the road; that the obligation assumed by the highway commission was in excess of the funds appropriated by the Legislature and would require for its payment the amount which the county had offered to lend, and that the chairman of the highway commission was undertaking to accept the loan and had issued directions to the commission's clerical force to credit the county and to apply in repayment whatever funds should be subsequently allocated to the county for the construction of its roads. The plaintiff further alleged that the contract is void and prayed that the parties be restrained.

The commissioners and the highway commission filed separate answers admitting the material allegations in reference to the contract, but denying that it is void. The defendant Page filed an affidavit to the effect that the contract had been made pursuant to a policy adopted by the commission soon after its organization in 1921; that advances approximating a total of ten million dollars had been accepted from the various counties of the State to hasten the building of links in the highway system, and the commission had promised to reimburse the counties out of funds thereafter available for the purpose; that some of the counties had been reimbursed in part, some in full, and that a large number of similar contracts were then outstanding. He further stated that the county commissioners had been informed that the highway commission had no authority to pledge the faith and credit of the State to the repayment of these advances beyond the extent of funds already appropriated, and that the promise to reimburse the counties had been conditioned upon future allocations; that the amount which Johnston County had agreed to advance, together with available State funds, would be sufficient to complete the proposed road, and that without an additional issue of bonds an annual construction fund of $60,000 would go to Johnston County.

At the hearing Judge Daniels, being of opinion that the contract in question had been executed without authority of law and was *ultra vires,* restrained and enjoined the defendants from proceeding further in carrying said contract into effect. The defendants excepted and appealed.

*A. M. Noble for plaintiff.*
*James D. Parker for Johnston County.*
*Charles Ross for State Highway Commission.*
*Attorney-General Brummitt and Assistant Attorney-General Nash for State.*

ADAMS, J. The exception raises the question whether the instrument purporting to be a contract between the county of Johnston and the State Highway Commission was *ultra vires,* or entered into without authority of law; and the answer to this question involves the alleged legal right of the county to make the proposed loan and of the commission to obligate itself to the repayment thereof as the contract provides.

The act creating the existing highway commission and making provision for a State system of dependable roads went into effect on 3 March, 1921, authorizing the continuance of the former commission, however, until the commission thereby created should be formally organized. Public Laws 1921, ch. 2; Public Laws 1919, ch. 189. Soon thereafter the provisions of section 14 were sustained on appeal from a judgment rendered in the Superior Court of Harnett County. In that case it was alleged that on 20 May, 1921, the board of commissioners had entered into a contract with the State Highway Commission, in accordance with section 14, for the advancement of funds to construct a part of the highway system through the county. This Court, upholding the contract, said in substance that a county primarily is required to construct and maintain its roads and bridges, and that as the board of commissioners was specially authorized by section 14 to contract with the highway commission in reference to the construction of the road, it was the duty of the board, so far as it was legally empowered, to provide the funds necessary for such purpose. *R. R. v. McArtan,* 185 N. C., 201.

In *Lassiter v. Comrs.,* 188 N. C., 379, the act of 1921, ch. 2, was presented in another phase. There it appeared that as between two routes proposed for a part of the State highway system extending from Raleigh to Wendell, the State Highway Commission had adopted the Milburnie, or upper road, on condition that the board of commissioners of Wake County should contribute the sum of $41,500 as a proper liability and as a proportion of the cost of construction and repair to be borne by the county. It was objected that without a vote of the people the commissioners had no legal right to make the contribution, but the Court held otherwise, *Chief Justice Hoke* saying: "So all-pervading and insistent is the power of county commissioners on the question of public roads that, although special legislation may disclose a purpose to supervise and control the matter of roads by other boards, as the township system, unless clearly forbidden by such legislation, the county commissioners could lend proper aid to this effort by appropriating general county moneys for the purpose. *Bunch v. Comrs.,* 159 N. C., p. 335. And it has also been uniformly held that in the exercise of these powers the construction and repair of the public roads

are a necessary expense not requiring the approval of a popular vote. *Woodall v. Highway Commission,* 176 N. C., 377; *Davis v. Lenoir,* 178 N. C., 668; *Hargrave v. Comrs.,* 168 N. C., 626; *Murphy v. Webb,* 156 N. C., 402. It is urged against the exercise of such power in the present instance that when the Milburnie Road is taken over by the highway commission, such commission is given full control, and it is then no longer a county road; but, as shown in the evidence, this was a public road, a part of the county system, and for the repair and upkeep of which the county was liable. Unless and until it is taken over by the State commission it constitutes a county charge. And we see no reason why, in the exercise of their power concerning it, the county commissioners may not provide by contract a way for the continued and reliable upkeep by the State commission, and thus relieve the county of the incidental burdens. True, we would be slow to hold that county commissioners could make an arrangement with some non-official board by which they would undertake to absolve themselves from their governmental duties in the matter, but this present arrangement is with a governmental body also under the control of the State and which, by the acts of its creation, is given full power to take over roads and stipulate for the terms in which they will do it."

In these cases it is held in purport and effect, if not in express words, that where there is no legislation providing otherwise, the boards of county commissioners are charged with responsibility for the construction and maintenance of the public roads in their respective counties; that the cost of such construction and upkeep is a necessary expense; that these governmental agencies, the boards of county commissioners and the State Highway Commission, are vested with power to enter into contracts and agreements for the construction of roads forming a part of the State highway system, and that the purpose of the act of 1921, ch. 2, is to encourage coöperation between the highway commission and the county authorities. In the first of these cases (*R. R. v. McArtan*) the board of commissioners, after making a contract with the commission, found it necessary to borrow $100,000, and to this end issued county securities and levied a tax to provide for their payment, and the court not only approved the contract, but declined to restrain the collection of the tax; and in the second (*Lassiter v. Comrs.*), the amount appropriated for building the road on the accepted route was treated as a proper liability of the county. If the contracts set out in these cases were enforceable, we see no sufficient or satisfactory reason why Johnston County, pursuing the same policy and relying on the same principle, could not enter into a valid contract with the highway commission for making the proposed loan.

But against the alleged right of the county to advance the money it is urged on behalf of the plaintiff that the agreement for "fair reimbursement" cannot be enforced against the highway commission, because the county is to be paid by the allocation of money to be raised by the sale of bonds hereafter to be authorized, or by the appropriation of other road construction funds. Accepting as the definition of a contract an agreement enforceable at law made between two or more persons by which rights are acquired by one or more to acts or forbearance on the part of the other or others, we are confronted with the direct question whether the terms of the obligation assumed by the highway commission to reimburse the county are such as will avoid the contract.

As we understand, no point is made as to the right to contract that a debt may be paid out of a particular fund. *Evans v. Freeman,* 142 N. C., 61; *Typewriter Co. v. Hardware Co.,* 143 N. C., 97; *Basnight v. Jobbing Co.,* 148 N. C., 350, 357. The objection stressed is the uncertainty of the fund, or the commission's agreement to create an indebtedness in excess of the funds appropriated to its use. It is contended by the defendants that the force of this objection may depend upon the scope and efficacy of the contract interpreted in the light of the principle which underlies and the purpose which pervades the act by which the highway commission was created; that the act, notwithstanding its diverse subdivisions, is to be regarded as a unified whole; that its chief purpose was to enable the commission as an agency of the State to construct, take control of, and maintain approximately 5,500 miles of dependable highways and thereby to establish a system for the entire State, work on the various links to be of such character as would lead to hard-surfaced construction as rapidly as money, labor, and material should permit; and that it was thought that the work would cover an indefinite period and that the funds necessary for the accomplishment of the ultimate object would be raised from time to time as the work progressed. To the achievement of this end, it is contended, the act contemplates coöperation, unity of purpose, and, as far as practicable, unity of action between the highway commission and the various counties of the State. Public Laws 1921, ch. 2, secs. 2, 3, 10(b), 10(i), 14. Upon this theory the defendants assert that the legislative intent to carry on the work until the highways outlined in the act of 1921 are completed indicates a purpose to provide the necessary funds, from year to year, by issuing bonds and in other ways; that the agreement on the part of the highway commission to pay back the money advanced by the county should be construed in the light of this general legislative policy; and that the principle usually applicable to a promise to make payment out of funds not presently available is not controlling in the present instance.

We need not now determine whether this position is fundamentally sound, for without regard to it the contract, in our opinion, may be sustained. The allocation of funds to be derived from the sale of bonds hereafter to be issued is not the only means provided for satisfaction of the loan. By the terms of the contract, "other road construction funds" may be applied in liquidation. In the answer of the board of commissioners it is said that continuing funds now authorized by legislative provision will entitle Johnston County to an annual road construction fund of about $60,000, which may lawfully be applied in repayment of the money advanced. An allegation substantially to this effect appears in the affidavit made by the chairman of the highway commission. If from this fund there be deducted an amount sufficient to pay the interest on the authorized bonds and to provide a sinking fund for their retirement in addition to the cost of maintenance, the remainder, it is admitted, may be applied on the loan. The sum annually provided in this way is limited, but it may be thus applied, in the words of the contract, "to the extent that it may be sufficient therefor." This in itself is such valuable consideration as will support the contract: a promise by the county to advance the money and a promise by the highway commission to make payment out of funds presently available "to the extent of their sufficiency" for such purpose. No question is made as to the adequacy of the consideration, for the law does not require that the consideration and the thing to be done shall be in exact proportion as to values. "So long as it is something of real value in the eye of the law, whether or not the consideration is adequate to the promise, is generally immaterial in the absence of fraud. The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced." 13 C. J., 365; *Exum v. Lynch,* 188 N. C., 392, 396.

With knowledge not only of its primary responsibility for the construction and upkeep of its public roads, but of the liability of each party to the proposed contract, the board of commissioners of Johnston County, for the purpose of building a part of the highway system, has agreed to advance to the highway commission a fixed sum which is to be repaid by the commission out of designated funds, a part of which is now available; and upon the facts appearing in the record we find no objection that prevents the parties from making and receiving the loan in accordance with their agreement.

The judgment declaring the contract void and continuing the restraining order to the final hearing is, therefore,

Reversed.