H. H. POE v. W. F. SMITH & CO., R. R. LENNON, ET ALS.

(Filed 20 September, 1916.)

**1. Mortgages—Release of Lien—Deeds and Conveyances—Fraud—Evidence.**

A release by deed or otherwise by the mortgagee of his lien upon lands sold by his mortgagor to another does not furnish any evidence *per se* that he participated in the fraudulent representations of his mortgagor in procuring the sale, or in such representations made by his own attorney acting independently of him.

**2. Appeal and Error—Instructions—Record.**

Where the charge of the lower court is not set out in the record, it is considered on appeal as having been a correct exposition of the law.

**3. Deeds and Conveyances — Fraud — False Representations — Evidence—Values.**

Where a deed is sought to be impeached on the ground that it had been procured by false and fraudulent representations made to the purchaser of the land, that it had been sold to another party at a profit, and that the purchaser would immediately make a profit from the transaction, evidence that an unaccepted bid had theretofore been made at a much less sum at a foreclosure sale under a mortgage is not material, and its exclusion by the trial court is not erroneous.

**4. Deeds and Conveyances—Fraud—Burden of Proof—Correction.**

Where a deed is sought to be set aside for fraud in its procurement, the burden of proof is not on the plaintiff to show the fraud by clear, strong, and convincing proof, as where a deed is sought to be corrected or reformed, but only by the preponderance of the evidence.

**5. Deeds and Conveyances—Contracts—Pleadings—Statute of Frauds.**

Where the plaintiff alleges that the defendant induced him to purchase a tract of land for $5,500 by false and fraudulent representations that he had sold it to another for $7,000, and would repay him $6,100 in this deal, and that he is able, ready, and willing to comply with his contract to convey the land upon receiving the purchase price of $6,100 agreed upon, and demands a recovery thereof: *Held*, the action is upon the contract to convey the land, and not for the profits thereof, and the contract is governed by the statute of frauds, requiring that the contract be in writing, etc. *Brown v. Hobbs*, 147 N. C., 73, cited and distinguished.

CIVIL ACTION tried before *Devin, J.*, and a jury, at November Term, 1915, of HARNETT.

The plaintiff declared on two causes of action, in the first of which he alleged that he was induced to buy certain land in Columbus County by the false and fraudulent representations of the defendants R. B. Lennon, W. F. Smith Company, and Hiram Baggett, for the price of $5,500, on which he paid $1,500, and for the balance of $4,000 gave his two notes, each for $2,000, secured by mortgages; and, in the second, he alleged that Hiram Baggett, for himself and his codefendants, had agreed to buy the land from plaintiff, or take it off his hands, at $6,100,

which would yield to plaintiff a profit of $600, as he, Hiram Baggett, had contracted to sell it to another at $7,000.

The following portions of the testimony and record will sufficiently show the nature of the contentions and matters in controversy.

Plaintiff testified in his own behalf: "In the latter part of the year 1912 I had sold my farm and moved to Lillington. I was interested in buying some farm land. I saw an advertisement in the newspapers of some land in Columbus County for sale by Mr. R. B. Lennon, who was then merchandising in the town of Lillington. I called to see him with reference to this land, and as a result of the conversation we made an appointment and went to Columbus County together and looked over the property. He priced the property to me at $6,500. We spent two nights and one day at Evergreen investigating the property. Mr. Lennon was so closely associated with me that I did not make much inquiry from other people as to the property. I declined to buy the property at his price, but on our way back, while stopping over at Elrod, he agreed to reduce the price to $5,500, provided the W. F. Smith Company, of Fayetteville, who he said held a mortgage on this property and some other for $6,500, would consent to the sale and join with him in the deed. I agreed to buy an option on the land at the price of $5,500 for twelve months. We arrived in Fayetteville after night, and early next morning Mr. Lennon called Mr. Smith, of the W. F. Smith Company, and asked him to come down to the station to meet us before the departure of our train for Lillington. Mr. Smith agreed that the sale at $5,500 would be satisfactory to the W. F. Smith Company, provided the payments were made to them, and that he would stand by whatever trade Lennon made. Upon our return to Lillington, I drew an option on the property for twelve months and Mr. Lennon signed it. I paid him $11 for it. Later I wrote Mr. Lennon a note that I did not think I would take the property, and he might consider himself released from his option. Soon thereafter the defendant Hiram Baggett came to me and asked if I expected to take the Lennon property. I told him that I had not investigated the property sufficiently to buy it, and I would not buy it without further investigation. A few days afterwards I saw Mr. Baggett again, and he asked me at what price I had gotten an option on the Lennon property, and I told him at $5,500. He expressed great surprise, and said that he had taken an option from Lennon, also, but that his option was for $6,450. He asked if my option was recorded, and said that he had sent his for registration, but showed me a copy of it. Mr. Baggett said he was buying the land for another man, and had it sold for $7,000; that his man did not have the money to get."

Q. "What proposition did Mr. Baggett make you with reference to buying the land and any disposition of the land thereafter?"

Defendant objects. Overruled. Exception.

A. "He told me that he would take the land, and there was an agreement drawn up, but never signed. I drew up the agreement and came downtown to sign up, and did not find him. I got up with him finally two or three times, but the agreement was never signed, and when we came to the day of trade with Lennon, Mr. Baggett said I might rely upon his word, and I did not think but what he was ready to take it at once. I was to get $600 profit between my option and his price to me. I asked him if he was thoroughly satisfied with the value and with the title, and he said he was; that the land was worth more than $7,000, and he was selling it for that price. I was not to pay any cash. The first payment of $1,500 was to be deferred one month to give time for the deal to be closed. About a month thereafter, to wit, on or about 26 May, 1913, I met with R. B. Lennon, and Mr. W. F. Smith of the W. F. Smith Company, and a Mr. Pond of said company, at the office of Messrs. Baggett & Baggett, of which firm Hiram Baggett was a member, but who was not present at that time, and a deed was prepared and executed by R. B. Lennon and wife and the W. F. Smith Company, conveying to me the land in question, and I thereupon executed and delivered my note for $1,500 due 1 July, 1913, payable to the W. F. Smith Company, which was secured by a mortgage on a house and lot in Lillington, and two bonds in the sum of $2,000 each, payable to W. F. Smith Company, one due 1 January, 1914, and the other due 1 January, 1915, they being secured by a mortgage on the land in controversy. On that day Hiram Baggett told me that he would go to Columbus immediately and close up his deal, conveying the land to his purchaser at $7,000. On the 27th of May I received a letter from said Baggett, dated Evergreen, 27 May, 1913, as follows:

"'I tried to see you before I left home yesterday in regard to the property here. I think my party is going to fall down on taking it. He says he don't think he will purchase at the price. I will let you know certainly when I get home.          'Respectfully,

'H. Baggett.'

"Thereafter I received from said Baggett a letter, dated Hot Springs, Ark., on 6 June, 1913, as follows:

"'Mr. H. H. Poe,
    *Lillington, N. C.*

"'Dear Sir:—My parties have refused to take the Lennon land. I did not receive this notice until I got here yesterday. I thought it my duty to inform you, so you could dispose of it to the other parties. I hope you can do as you said—get more out of it than my option was for. My option was good until the 15th, but I release any claim on the land by reason of the option.          'Respectfully,

'H. Baggett.'

"The reference in said letter to a conversation of mine in which it was suggested that I had said that I could get more out of it than this option was a conversation that I had with him immediately after we had closed our contract, in which I told him that R. B. Lennon told me not to sell at the price at which Baggett had agreed to take it off my hands, for I could get more from another party. This conversation I had related to Baggett, and told him that he might investigate.

"After Mr. Baggett's return from Hot Springs I approached him about the matter, and asked him what was the trouble, and he said that his man had fallen down on getting the money. I asked him to give me the man's address, and he said he would turn over his correspondence. He said that he could not find it right then, but would look it up. I asked him to give me the man's name and address, and he replied that he would get up the correspondence, and put me off that way.

"Prior to the sale R. B. Lennon told me the two houses in Evergreen would rent for $8 or $10 per month; but upon investigation after the purchase, I found they were renting for $3 or $4 per month. I do not consider the land was worth exceeding $2,500 at the date of my purchase.

"I paid to the W. F. Smith Company, through their attorneys, Baggett & Baggett, my note for $1,500 in installments as follows: $400 on 23 July, 1913; $170 on 13 August, 1913; $956.79 on 11 September, 1913."

There was other evidence on the part of the plaintiff tending to show the value of the lands in question as from $3,360 to $3,798 at the time of the conveyance to the plaintiff.

The option of R. B. Lennon to Hiram Baggett was introduced in evidence, showing that it was registered 26 May, 1913, and that it expired on 15 June, 1913.

At the conclusion of the plaintiff's evidence there was motion on the part of W. F. Smith Company for judgment of nonsuit. Motion allowed, and plaintiff excepted.

The defendants Lennon and Baggett offered testimony tending to contradict the material testimony of the plaintiff and to show that the land was worth from $5,500 to $7,000 at the time of the sale, and the defendant Baggett testified, in explanation of his option not being registered at the time he told Poe that it had been sent on for registration, that he had sent the same down for registration, but that it was held in the office for payment of fees until the 26th of May, when, the fees having been paid, it was actually registered.

Defendant Baggett denied that he had agreed to buy the land for $6,100 or at any other price, or that he had sold the land at $7,000, saying that he did tell Poe that he had a prospective purchaser for the land, and that he thought he could sell it to him at $7,000. Mr. Baggett further testified that he asked Mr. Poe, in the event he purchased the

land, if he would be willing to extend the time of the option which Lennon had given to Baggett. Poe declined to do this, but said he would give Baggett one-half of all he could sell the land for above $6,500.

The plaintiff offered to prove that the land had been sold at public auction by the W. F. Smith Company, under its mortgage from Poe, in February, 1914, and that the highest bid was $1,800. This was after the suit involving the title to the property had been commenced, and the offer was made on the cross-examination of defendant's witnesses, after the motion of W. F. Smith Company for a nonsuit had been sustained. This evidence was excluded by the court, and plaintiff excepted.

At the conclusion of the plaintiff's evidence defendant Hiram Baggett moved for a nonsuit as to himself, upon the plaintiff's second cause of action, as set forth in his supplementary complaint. His Honor stated at the time that he would reserve his ruling upon this motion, and, at the conclusion of all the evidence, the motion was renewed and the court sustained it, on the ground that the alleged contract on the part of the defendant Hiram Baggett, to take the land off the plaintiff's hands at $6,100, or at a profit of $600 to the plaintiff, was not in writing, and could not, therefore, be enforced, to which ruling of his Honor plaintiff excepted.

The jury returned a verdict as follows upon the issues submitted by the court:

1. Did the defendant Hiram Baggett, by means of false and fraudulent representations, procure the plaintiff to purchase the lands as described in the complaint? Answer: "No."

2. Did the defendant R. B. Lennon, by means of false and fraudulent representations, procure the plaintiff to purchase the lands as described in the complaint? Answer: "No."

3. If so, what damages, if any, has plaintiff sustained by reason thereof? (Not answered.)

*E. F. Young, Clifford & Townsend, and B. C. Beckwith for plaintiff.*
*Sinclair & Dye and Ray for defendant Lennon.*
*E. G. Davis for Smith Company.*
*Charles Ross for Baggett.*

WALKER, J., after stating the case: The nonsuit as to the W. F. Smith Company was properly allowed. It held a mortgage on the land, and in order that plaintiff might acquire a good and unencumbered title to the land from Lennon it was necessary that the Smith Company should either release its security, or lien upon it; or join in the conveyance; but we can see nothing in the record which tends to connect it with any fraudulent transaction in connection with the matter. The

Smith Company merely agreed to the sale and conveyance to plaintiff subject to their prior lien, and received the first payment of $1,500, in reduction thereof; but there is no evidence to show that they knew of any representations by Lennon or Baggett, false or otherwise, and the jury have found that there were none. If Lennon and Baggett committed no fraud, how can it be said that the Smith Company did? If Baggett was the attorney of the Smith Company (as contended by plaintiff), and anything he said or did to the injury of the plaintiff is to be imputed to that company, as his principal, the jury having acquitted him of all wrong, it follows, of course, that there is nothing to impute to the company. The jury have simply found the facts upon disputed testimony in favor of the defendants. But we find no evidence in the record upon which the Smith Company can be made liable to the plaintiff for any false or fraudulent representations if such had been made by Lennon or Baggett.

As to the defendants Baggett and Lennon, the verdict is, upon conflicting evidence, that the allegations of the plaintiff as to false and fraudulent representations are not true, and, as to this feature of the case, the plaintiffs have utterly failed. The charge of the court is not in the record, and there is no exception taken to it. It stands, therefore, unchallenged by the plaintiff and as a correct exposition of the law applicable to the evidence. This, of course, reduces the case, thus far, to a pure issue of fact, which has been settled against the plaintiff.

We do not see how the exclusion of the evidence as to the bid at the sale under the mortgage held by the Smith Company was prejudicial to the plaintiff, if it was competent and offered by him in due time. If admitted, it would not have turned the scales in favor of the plaintiff upon the issues as to whether false and fraudulent representations had been made by Lennon and Baggett. In the aspect of the case then presented, it would not have aided the jury in deciding the vital question as to the alleged representations. If Lennon and Baggett had dishonestly and intentionally misled and deceived the plaintiff by false statements, which induced him to enter into the contract, he would be entitled to the relief demanded by him without regard to the value of the land, for the alleged fraud did not depend upon value so much as it did upon the fact whether the representations had been made and were false, so as to lead the plaintiff to do what otherwise he would not have done. Value is sometimes competent to be considered, and may be a very important element in certain cases of fraud, but not here, in the light of this evidence. The Smith Company had been dismissed from the case when this evidence was offered.

It is not a correct proposition, though, as contended by the defendants, that plaintiff must establish his allegation of fraud, in a case of this kind, by clear, strong, and convincing proof, but only by a pre-

ponderance of the evidence. *Ray v. Patterson,* 170 N. C., 226; *Harding v. Long,* 103 N. C., 1; *Avery v. Stewart,* 136 N. C., 426; *Glenn v. Glenn, ibid.,* 729; *Lamb v. Perry,* 169 N. C., 436.

This is an action brought for the purpose of setting aside a deed for fraud, and not to correct or reform a written instrument or to establish a parol trust. The distinction between the two classes of cases is based upon the difference in the presumption of the law arising in each. A fraud is not presumed, except where there is some confidential or peculiar relation between the parties, not necessary to mention, as it does not exist here. The law, therefore, requires that he who alleges fraud must prove it; but it does presume that the writing of the parties truly expresses their agreement; and for that reason, when an attempt is made to vary it, or to reform it, the party who seeks to do so must take the laboring oar and satisfy the jury of the mistake in the writing by stronger proof than is ordinarily required in civil cases; in other words, by proof clear, strong, and convincing. *Lehew v. Hewett,* 138 N. C., 6; *Lamb v. Perry, supra; Perry v. Ins. Co.,* 137 N. C., 402; *Ray v. Patterson, supra.*

The only serious question in the case grows out of the second cause of action set up in the supplemental complaint, where it is alleged that Hiram Baggett agreed "to take the land off of plaintiff's hands at the price of $6,100, or a profit to the plaintiff of $600." Plaintiff's intention to charge by this language that Baggett had agreed to buy the land from him for $6,100 is fully evidenced by subsequent allegations of the complaint, especially the fifth paragraph of his complaint, and the prayer for judgment, which are as follows:

"That the plaintiff stands ready and willing to comply with and carry out the contract with the said Hiram Baggett, and to convey the land to the said Hiram Baggett or to him and his codefendants upon payment to plaintiff by him or them of the purchase price agreed upon, to wit, $6,100, and interest on the same from 16 May, 1913.

"Wherefore, plaintiff demands judgment that he recover of the defendants the sum of $6,100, with interest from 16 May, 1913."

The words, "and to convey to the said Hiram Baggett or to him and his codefendants, upon payment to plaintiff by him or them of the purchase price agreed upon," manifestly show that plaintiff was suing upon a contract to convey land, and not upon one merely for the division of the profits of a sale of the land to another, and the prayer for judgment extends to the entire amount of the price of $6,100, and is not restricted to the amount of the profit of $600. This being so, the case is governed by the principle that the statute of frauds requires the contract to be in writing and to be signed by the party to be charged or by his duly authorized agent. Revisal, sec. 976. As it is sought to charge the defendant Baggett upon this contract, he is protected by the statute. *Mizell*

*v. Burnett,* 49 N. C., 249; *Green v. R. R.,* 77 N. C., 95; *Miller v. Mona-zite Co.,* 152 N. C., 608; *Brown v. Hobbs,* 154 N. C., 544.

This was not an executed sale, where the deed, under the contract to convey, had been made to Baggett, with a promise that upon a sale of the land to another he would divide the profits with the plaintiff, as in *Brown v. Hobbs,* 147 N. C., 73. The plaintiff, therefore, has failed to show a case within the principle decided in *Brown v. Hobbs, supra,* or *Michael v. Foil,* 100 N. C., 78; *Little v. McCarter,* 89 N. C., 233, and the cases cited in *Brown v. Hobbs,* 147 N. C., 73, and 154 N. C., 544. The promise here is not collateral to an executed contract of sale, but the agreement to sell and the reciprocal promise to buy are still executory in form and substance. As said by *Savage, C. J.,* in *Hess v. Fox,* 10 Wendell (N. Y.), 436, "No question can arise on the validity of the agreement to sell. That was performed, and the remaining part was to pay over money, supported by the consideration of land conveyed to the promisor."

The rulings of the court are approved by us.

No error.