JOE GARRIS AND WIFE, GEORGIANNA GARRIS, v. LEO L. SCOTT AND WIFE, MARY T. SCOTT.

(Filed 18 September, 1957.)

**1. Cancellation and Rescission of Instruments § 10½—**

Where, in an action to cancel a deed for fraud, defendants admit that plaintiffs had title at the time of the execution of the deed in controversy, an instruction to the effect that at the time of executing the deed attacked plaintiffs had only an option to repurchase because of their prior execution of a fee simple deed to third parties with option to repurchase from such third parties, is highly prejudicial, since if plaintiffs had only an option to repurchase no question of inadequacy of consideration could arise.

**2. Cancellation and Rescission of Instruments § 10—**

Evidence that the land conveyed was a 125-acre farm having a tobacco allotment of five and one-half acres, and that the consideration for the deed attacked was not greatly in excess of the value of the tobacco allotment alone, is evidence of inadequacy of consideration.

**3. Evidence § 5—**

It is a matter of common knowledge that the value of farms in the tobacco section of Eastern North Carolina is dependent to a very large degree upon the size of their tobacco allotments.

**4. Cancellation and Rescission of Instruments § 10—**

While plaintiffs, in an action to cancel a deed for fraud, have the burden of proving the fraud relied on, it is not required that it be proved by direct and positive evidence but may be proved by circumstances surrounding the transaction establishing fraud as a reasonable inference.

**5. Same—**

Inadequacy of consideration is a circumstance tending to show fraud in procuring the execution of a deed, and while standing alone it is ordinarily insufficient to justify setting aside the deed, if the inadequacy of consideration is so gross as to show that practically nothing was paid, it is sufficient to be submitted to the jury without other evidence.

APPEAL by plaintiffs from *Frizzelle, J.,* February Term 1957 of CRAVEN.

Civil action to annul a deed of conveyance on the ground of fraud.

Plaintiffs undertook to sustain the allegations of their complaint by the evidence summarized below:

The plaintiffs, Joe Garris and Georgianna Garris, are husband and wife. In January 1956 Joe Garris was 75 years old, and Georgianna Garris was 68. He cannot read, and "can't write except to mess up" his name. His wife cannot read, and cannot write, "she can mess at her name." They alleged in paragraph 2 of their complaint that on 20 January 1956 they "were the owners in fee simple of a certain farm in Craven County, hereinafter described in paragraph 5, subject to indebtednesses which were encumbrances in the amount of approximately $6,000.00." The defendants in paragraph 2 of their answer admit the truth of the above allegation.

The farm has 125 acres, 25 acres of which were cleared in January 1956. On this farm were two dwelling houses, one an old five-room house, and the other a six-room house built in 1953, two tobacco barns in pretty good shape, two little houses used for putting tobacco in, and a small building on the creek bank leased to some tobacco men from Wilson for use in fishing. In 1956 the tobacco allotment on the farm was 5.5 acres "before it was cut." The fair market value of this farm in January 1956 was between $12,000.00 and $15,000.00.

Joe Garris and the defendant Leo L. Scott entered into an oral agreement to the effect that in consideration of Scott's paying off all of their indebtedness, plaintiffs were to sign a paper releasing to the defendants their tobacco allotment on the farm, and that when the plaintiffs paid defendants the money they had used to pay their debts, the plaintiffs were to get back the tobacco allotment. Leo L. Scott told Joe Garris he wanted to carry the tobacco allotment to his land, he didn't want their farm, they could have the benefit of all the land, except the tobacco allotment.

Leo L. Scott had a paper writing prepared, and told the plaintiffs to sign it. He told Joe Garris "it was a paper just to release the tobacco allotment, so he could tend the tobacco allotment." The paper was not read to the plaintiffs. The plaintiffs signed the paper writing, and acknowledged its execution. Joe Garris testified: "I signed it for the lease of the tobacco allotment, that's what I signed it for. They told me that was to release the tobacco allotment." The paper writing was a deed dated..........January 1956 conveying the farm in fee to the defendants. The grantors acknowledged the due execution of the deed before a Notary Public in the Office of the Sheriff of Craven County on 20 January 1956. The deed is recorded in the Office of the Register of Deeds for Craven County in Book 528, page 408.

In April 1956 Joe Garris learned that the paper he signed was a deed of conveyance, and instituted this action in November 1956.

The defendants' evidence is in substance as follows: In January 1956 Joe Garris and Leo L. Scott entered into an oral agreement by which Joe Garris agreed to convey to the defendants their farm upon consideration of the defendants paying to Joe Garris $500.00 and paying all of his debts. Leo L. Scott inquired of W. I. Bissette of Grifton, to whom Joe Garris was indebted, how much Garris owed him and others on the farm, and Bissette replied about $6,500.00. Scott employed Mark Dunn, a lawyer, to check the title. Mark Dunn found a deed recorded in Book 528, page 189, in the Register of Deeds Office of Craven County, by which the plaintiffs had conveyed their farm in fee to Mark Phillips, a bookkeeper of W. I. Bissette, and said by Bissette, according to Leo L. Scott's testimony, to be his son-in-law. Plaintiffs acknowledged the due execution of this deed on 7 January 1956, and the deed was ordered to be recorded on 12 January 1956, though the deed is dated 24 December 1955.

Leo L. Scott, one of the defendants, testified as follows:

"Mr. Mark Dunn, in checking the title, found the deed from Joe Garris to Mark Phillips and wife; it was made between December 15 and January 20. It was during that time, I imagine, about the 13th or 14th, I imagine, along in that time. Mr. Dunn wrote a deed. He prepared a deed for four signatures: Mr. Phillips', Mrs. Phillips', and Joe and Georgianna Garris'. That's the deed there. The names of Mark Phillips and his wife were placed on the deed because he had a deed ahead of this. I took it over to Mr. Bissette and left it over there that afternoon. Mr. Bissette said his lawyer won't there at the time; that he would keep it and have him to check it that night and went down to the Register of Deeds the next day. That was Saturday at 10 o'clock. He said his lawyer was Mr. Bob Wheeler.

"Mr. Bob Wheeler brought the deed to me. That is Mr. Wheeler right there. He is the lawyer appearing in this case for Joe Garris. I left the deed in Grifton all night long Friday. The next time I saw this deed was when Mr. Bob Wheeler and Mr. Bissette brought it to me. Mr. Wheeler handed this deed to me; he gave it to me down in the Register of Deeds of Craven County. He took it and actually handed it to me. When I left the deed in Grifton with Mr. Bissette and his lawyer, Mr. Wheeler, none of the chop marks were in it. At the time when Mr. Wheeler brought it back to me the next day, those cross-marks were in it. It was chopped up so badly I carried it to my lawyer, Mr. Dunn, and we checked it and it seems that Mr. Phillips and Mrs. Phillips had been checked out of it and another deed issued. Mr. Bob Wheeler gave me another paper, that deed there from Mark Phillips back to Joe Garris."

The deed referred to was marked as defendants' Exhibit A, and the case on appeal states it was read into the record by Mr. Beaman. However, this deed marked defendants' Exhibit A is not in the statement of the case on appeal.

Scott further testified: "I gave Mr. Wheeler a check for the deed. That is the check I gave Mr. Wheeler; it is for $10.00; that was for the deed from Mark Phillips back to Joe Garris."

Mark Dunn is a practicing lawyer in New Bern. About 20 December 1955 he was employed by Leo L. Scott to examine the title to Joe Garris' farm. His examination disclosed there were some deeds of trust against the farm, two years taxes due, and several judgments. He reported this to Scott. Dunn testified as follows:

"The next contact I had with Leo L. Scott was about the 19th or the 20th of January, 1956, when he said that Joe Garris had agreed to sell the land and he wanted me to prepare a deed for it and to make sure there was nothing further against it. I made further examination and found that since I had first searched the title, a deed had passed from Joe Garris and wife to Mark Phillips and that there had also been an option given back from the Phillipses to the Garrises. I reported that to Mr. Scott. As a result of that, I prepared the deed from Joe Garris and his wife to sign and for Mark Phillips and his wife to sign to Leo Scott and his wife.

"I gave the deed to Leo Scott on January 20, about noon. I told him it would have to be signed by all four of them, and he stated that he was going to take it to them for their signatures. The next morning Mr. Scott called me and said Mr. Phillips and the Garrises were going to be at the Courthouse that morning. When they

arrived, he called me and I came up here to the Courthouse. I think the Garrises were already here and shortly after I arrived, Mr. Wheeler and Mr. Bissette came in. Mr. Leo Scott showed the deed with reference to the 'X's' marking out Mark Phillips' name and his wife's name. He won't sure it would be good with 'X's' on the instrument. At the same time he had the deed from Mark Phillips to Joe Garris, so I told him it would just be the expense of recording this deed, too. Those present when the deed was handed to me by Mr. Leo L. Scott, in the Register of Deeds Office, were: the Garrises, Mr. Wheeler, and Mr. Bissette. Concerning the question about the 'X's', I told Mr. Scott it would be all right as long as both deeds were recorded and this was recorded first. We then went down to the Sheriff's office with Georgianna and Joe Garris to have this deed acknowledged."

The defendants introduced in evidence an agreement entered into on 7 January 1956 between Mark Phillips and wife, and Joe Garris, and wife, the execution of which was duly acknowledged by all four parties to it on the same date. On 13 January 1956 the instrument was ordered to be registered, and is of record in Book 528, page 192, in the Public Registry of Craven County. This agreement granted plaintiffs an option until and including 2 January 1960 to purchase the farm they had conveyed to Mark Phillips upon the payment of $1,675.27 in five installments over a period of five years, the first payment to be on or before 1 November 1956. The agreement further provides: *"Third:* It is specifically understood and agreed that the parties of the second part shall have the full right and privilege to live on and operate and tend the said farm during the term of this option; provided that said right shall exist so long as the aforesaid payments of principal and interest are promptly made, and no longer."

When plaintiffs had executed the deed conveying their farm to defendants, defendant Leo L. Scott paid W. I. Bissette plaintiffs' indebtedness to him in the sum of $1,830.35.

The deed of plaintiffs to defendants was read to plaintiffs before they signed it. The defendants paid for the farm a total consideration of $7,134.18, according to Leo L. Scott's testimony. The fair market value of the farm in January 1956 was between $5,000.00 and $8,000.00. Leo L. Scott testified: "You couldn't buy the tobacco allotment without the place." Scott transferred the tobacco allotment to another farm owned by him.

On cross-examination Leo L. Scott said the farm was not worth over $7,000.00. He was asked "would you sell it now for $12,000.00?", and he replied, "it's not for sale." He was then asked, "would you sell it for $15,000.00?", and he replied, "it's not for sale."

L. P. Taylor, a witness for the defendants, testified "the tobacco allotment is worth $750.00 to $800.00 per acre."

Robert D. Wheeler, an attorney at law, withdrew as counsel for plaintiffs during the trial, and became a witness for them in rebuttal. He testified: "I have a deed in my hand dated the 20th day of January 1956 from Mark Phillips to Joe Garris. Mr. Phillips asked me to draw that deed. . . . I knew it conveyed a fee simple title. . . . Certainly I knew I had to draw that deed from Mark Phillips before Joe Garris could give good title. He had to get title back to give a deed of trust or a deed." This deed is not copied in the statement of the case on appeal.

The following issue was submitted to the jury: "Did the defendants procure the execution by the plaintiffs of the deed in Book 528, page 408, Craven County Registry, by fraud as alleged in the Complaint?" Before the issue was submitted to the jury, counsel for both sides entered into this stipulation: "That if and in the event the jury should answer the first issue 'Yes,' the defendants are entitled to be reimbursed by the plaintiffs the sum of $6,996.68, which is the purchase price paid by the defendants to the plaintiffs for the land in controversy."

The jury answered the issue No. Whereupon, the court entered judgment that the defendants are the owners of the land described in the complaint, and taxed plaintiffs with the costs.

Plaintiffs appeal to the Supreme Court.

*Owens & Langley for Plaintiffs, Appellants.*
*John W. Beaman and Lee & Hancock for Defendants, Appellees.*

PARKER, J. Plaintiffs have two assignments of error, both relating to the court's charge to the jury.

Their assignment of error Number One is to this part of the charge:

"I don't think they're entitled to but I'll give it. Gentlemen, counsel for the defendants requests the Court to give this instruction which I give now. That the legal effect of the deed from Joe Garris and his wife, Georgianna Garris, to Mark Phillips, dated December 24, 1955, and recorded in the Office of the Register of Deeds of Craven County in Book 528, page 189, and the agreement and option between Mark Phillips and wife, Lorene Osborne Phillips, parties of the first part, and Joe Garris and wife, Georgianna, parties of the second part, dated January 7, 1956, and recorded in the Office of the Register of Deeds of Craven County in Book 528, page 192, would be to place fee simple title to the lands in controversy and the entire tobacco allotment on said land in the said Mark Phillips pending the exercise of said option by Joe Garris and his wife, Georgianna Garris."

The defendant Leo L. Scott testified, "Mr. Bob Wheeler gave me another paper, that deed there from Mark Phillips back to Joe Garris." The case on appeal has this statement immediately after this testimony of Scott: "The deed referred to was marked as defendants' Exhibit A and was read into the record by Mr. Beaman." However, this deed does not appear in the case on appeal. Scott further testified: "I gave Mr. Wheeler a check for the deed. That is the check I gave Mr. Wheeler; it is for $10.00; that was for the deed from Mark Phillips back to Joe Garris." Mark Dunn, a witness for defendant, speaks of the deed from Mark Phillips to Joe Garris.

Robert D. Wheeler, a witness in rebuttal for plaintiffs, testified that he drew a deed dated 20 January 1956 from Mark Phillips to Joe Garris conveying a fee simple title. This deed is not in the case on appeal.

Plaintiffs alleged in paragraph 2 of their complaint "that on or about the 20th day of January 1956, the plaintiffs were the owners in fee simple of a certain farm in Craven County, hereinafter described in paragraph 5, subject to indebtednesses which were encumbrances in the amount of approximately $6,000.00." The defendants in paragraph 2 of their answer say, "that the allegations of paragraph 2 of the complaint are admitted."

It seems clear from defendants' admission in their answer and from the evidence that Mark Phillips and his wife conveyed back to plaintiffs by deed the farm before the plaintiffs executed the challenged deed to the defendants. It is unreasonable to believe that Leo L. Scott represented by Mark Dunn, a lawyer, paid plaintiffs $500.00 and paid their indebtedness, unless Mark Phillips and his wife had conveyed the farm back to plaintiffs. And yet with the solemn admission in defendants' answer that plaintiffs owned on 20 January 1956 the farm in fee simple, subject to indebtedness, the judge instructed the jury that the legal effect of the deed from plaintiffs to Mark Phillips and of the option to repurchase from Mark Phillips and his wife to plaintiffs placed fee simple title to the farm and the entire tobacco allotment on the farm in Mark Phillips pending the exercise of the option by plaintiffs. This part of the charge was highly prejudicial to plaintiffs, for it was to the effect plaintiffs had nothing to sell, but only an option to repurchase, and if plaintiffs had nothing to sell, no question of inadequacy of consideration could arise.

It is plain from the evidence that a principal reason, if not the main one, for Leo L. Scott's desire to purchase plaintiffs' farm was to get their tobacco allotment thereon. Scott testified, "you couldn't buy the tobacco allotment without the place." One of defendants' witnesses testified a tobacco allotment is worth $750.00 to $800.00 per acre. Whether that value is too small or not, the evidence before us does not

disclose. However, it is a matter of common and general knowledge that the fair market value of farms in the tobacco section of Eastern North Carolina is dependent to a very large degree upon the size of their tobacco allotments. Plaintiffs have evidence tending to show inadequacy of consideration.

No fiduciary or confidential relationship is alleged. The general rule is that fraud is not presumed, but must be proved by the party alleging it. *Poe v. Smith,* 172 N.C. 67, 89 S.E. 1003; 24 Am. Jur., Fraud and Deceit, secs. 256 and 257. This does not mean that fraud in a transaction can only be proved by direct and positive evidence. It is not ordinarily the subject of such proof. Fraud in a transaction may be proved by inferences which may reasonably be drawn from evidence respecting the transaction itself, or circumstances surrounding the transaction. *Vail v. Vail,* 233 N.C. 109, 63 S.E. 2d 202; *Halsey v. Minnesota-South Carolina Land and Timber Co.,* 174 S.C. 97, 177 S.E. 29, 100 A.L.R. 1; 24 Am. Jur., Fraud and Deceit, sec. 257.

Such a circumstance surrounding a transaction is inadequacy of consideration. The controlling principle established by our decisions is that inadequacy of consideration is a circumstance to be considered by the jury in connection with other relevant circumstances on an issue of fraud, but inadequacy of consideration standing alone will not justify setting aside a deed on the ground of fraud. However, if the inadequacy of consideration is so gross that it shows practically nothing was paid, it is sufficient to be submitted to the jury without other evidence. *Leonard v. Power Co.,* 155 N.C. 10, 70 S.E. 1061; *Knight v. Bridge Co.,* 172 N.C. 393, 90 S.E. 412; *Butler v. Fertilizer Works,* 195 N.C. 409, 142 S.E. 483; *Hill v. Ins. Co.,* 200 N.C. 502, 157 S.E. 599; *Hinton v. West,* 207 N.C. 708, 178 S.E. 356. See 24 Am. Jur., Fraud and Deceit, secs. 266 and 284.

It is but fair to the learned trial judge to say that in giving the challenged instruction at the request of defendants' counsel for which a new trial must be ordered, he said he did not think they were entitled to it.

New trial.