IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-179

Filed 15 October 2024

Catawba County, No. 20CVS2170

LISA W. LAIL, Plaintiff,

v.

WILLIAM EDWARD TUCK, JR., Defendant.

Appeal by defendant from judgment entered 8 June 2023 by Judge J. Thomas Davis in Catawba County Superior Court. Heard in the Court of Appeals 11 September 2024.

*Davis, Harman & Wright, PLLC, by R. Daniel Gibson, for the plaintiff-appellee.*

*Pope McMillan, P.A., by Christian Kiechel, for the defendant-appellant.*

TYSON, Judge.

William E. Tuck, Jr. ("Defendant") appeals from a jury's verdict in favor of Lisa W. Lail ("Plaintiff"). We find no error.

## I. Background

Plaintiff and Defendant both worked at Cutrite Furniture thirty years ago. Plaintiff and Defendant were involved in a romantic relationship, but did not see each other thereafter for thirty years. Plaintiff is illiterate, but she can sign her name and copy letters of the alphabet. Plaintiff was involved in an automobile vehicular

accident in 2010 and suffered a broken femur and damaged hip in the accident. Plaintiff has been unable to work since the accident and receives $800 monthly in Social Security Disability payments.

Plaintiff received a $37,348.79 settlement from the accident. Plaintiff used $30,348.79 of the proceeds to purchase her home located at 2623 Keisler Dairy Road (the "Property") in Conover. Plaintiff used the remaining balance of the settlement funds to purchase a replacement car and to make repairs to the home.

For three years Plaintiff's daughter's boyfriend helped her budget her money to pay the *ad valorem* taxes on the Property. Plaintiff's car broke down and she bought furniture on credit to help establish credit sufficient to finance the purchase of a replacement car. Plaintiff fell behind on *ad valorem* taxes on the Property in 2014.

Plaintiff entered into a payment plan with Catawba County to pay $75 per month to address her tax arrearages, but she was unable to complete the plan. Catawba County began threatening Plaintiff with foreclosure of the tax lien on the Property. Plaintiff sought help to avoid foreclosure of the Property. Plaintiff was offered $60,000 for the Property by Larry Ardnt, but she refused and sought $75,000.

Plaintiff and Defendant became re-acquainted in 2019. Plaintiff testified she asked Defendant to read her mail to her. Plaintiff testified she offered to sign the Property to Defendant, if he would pay the back and all future *ad valorem* taxes on the Property and to preserve a life estate to allow her to continue to live on the

Property.

Defendant hired an attorney to draft a deed. Plaintiff testified Defendant told her "if [she] brought anybody [to the closing] or told anybody the deal was off." Plaintiff testified she asked to see the lawyer Defendant had hired to prepare the deed, but was told he was unavailable to meet with her by his staff. Plaintiff's daughter testified Plaintiff asked a secretary in the attorney's office to read the draft deed to her, but she refused. Plaintiff was not advised to retain the services of an attorney to represent or review her concerns.

Plaintiff signed the deed without reading it, having it read to her, or having its contents or legal significance explained to her. Plaintiff was not provided a copy of the deed. The deed granted Defendant a fee simple absolute estate in the Property, and it did not reserve the agreed-upon life estate for Plaintiff. Plaintiff testified after the deed was signed Defendant took her to dinner and dropped her off at the Property. The deed was recorded on 25 February 2020 in Book 3556, Pages 559-60 in the Catawba County Register.

Defendant testified he was not aware Plaintiff was illiterate until she began stating she had retained a life estate in the Property. He denied ever reading Plaintiff's mail to her. Defendant testified he was allowing her to remain on the Property until April of 2020. After that period Defendant told Plaintiff he owned the Property, and she needed to vacate and leave her home. Defendant changed the locks in September 2020 and ordered Plaintiff to vacate the Property.

Plaintiff filed a complaint challenging the transfer of the Property on 1 September 2020. Defendant filed a motion to dismiss, affirmative defenses, an answer, and counterclaims for breach of contract, fraud, unjust enrichment, and recovery for occupation and trespass on 30 October 2020.

Defendant filed a Rule 12(b)(6) motion to dismiss Plaintiff claims, which was allowed in part and denied in part by order on 9 August 2021. The trial court dismissed Plaintiff's claims for constructive fraud, trespass, and unfair and deceptive trade practices, but it allowed Plaintiff's claims for fraud and for reformation of the deed due to fraud to proceed. Plaintiff filed an amended complaint on 22 January 2022 to add claims seeking recission and cancellation of the deed.

Evidence at trial tended to show the tax value of the Property was $112,000 and Defendant's *ad valorem* payments totaled $2,327.89. The jury found for Defendant on fraud, but deadlocked on whether Defendant had paid grossly "inadequate consideration under the circumstances." A second jury found Defendant's consideration was grossly inadequate under the circumstances. The trial court cancelled the deed from Plaintiff to Defendant recorded on 25 February 2020 in the Catawba County Register. Plaintiff was ordered to pay Defendant $5,608.96 to recover his costs, plus $1,163.76 in prejudgment interest. Defendant appeals.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issues

Defendant argues the trial court erred by: (1) submitting the issue of grossly inadequate consideration to the jury as a separate issue from fraud; (2) granting Plaintiff the remedy of recission based upon the jury's finding of grossly inadequate consideration; and, (3) by failing to enter a directed verdict in favor of Defendant.

## IV.     Grossly Inadequate Consideration

Defendant argues the trial court erred by submitting the issue of grossly inadequate consideration to the jury as a separate issue from fraud.

### A. Standard of Review

When reviewing a trial court's ruling on requested jury instructions, this Court is "required to consider and review [the] jury instructions in their entirety." *Davis v. Balser*, 155 N.C. App. 431, 433, 574 S.E.2d 177, 179 (2002) (citation omitted). The burden of proof is upon the party assigning error to demonstrate the jury instruction misled the jury or otherwise affected the verdict. *Id.* (citation omitted). This Court will hold a jury instruction as valid if the instruction "present[ed] the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed." *Id.* (citation omitted).

### B. Analysis

Defendant argues grossly inadequate consideration or intrinsic fraud is not an independent cause of action in North Carolina and cannot result in the recission of a deed. Defendant asserts North Carolina Pattern Jury Instruction – Civil 850.30, does not allow an independent cause of action. The instruction reads:

The (state number) issue reads:

Was the [price paid] [consideration given] to (name grantor) for [executing] [delivering] (identify deed) grossly inadequate under the circumstances?

On this issue the burden of proof is on the plaintiff. This means the plaintiff must prove, by the greater weight of the evidence, that the [price paid] [consideration given] to (name grantor) for [executing] [delivering] (identify deed) was grossly inadequate under the circumstances. To be grossly inadequate, the [price paid] [consideration given] must be so disproportionate to the value of what (name grantor) has given up by the conveyance that, under the same or similar circumstances, it would shock the conscience of a reasonable person.

Finally, as to the (state number) issue on which the plaintiff has the burden of proof, if you find by the greater weight of the evidence that the [price paid] [consideration given] to (name grantor) for [executing] [delivering] (identify deed) was grossly inadequate under the circumstances, then it would be your duty to answer this issue "Yes" in favor of the plaintiff.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of the defendant.

N.C.P.I. – Civil 850.30.

## 1. *Grossly Inadequate Consideration as Independent Action.*

Defendant asserts this pattern jury instruction, coupled with an accompanying footnote, which states: "[a] shockingly insufficient consideration will support a finding of grossly inadequate consideration (i.e., intrinsic fraud) without other evidence" does not allow grossly inadequate consideration to be an independent cause of action. *Id.* (citing *Wall v. Ruffin*, 261 N.C. 720, 723, 136 S.E.2d 116, 118 (1964);

*Garris v. Scott*, 246 N.C. 568, 575, 99 S.E.2d 750, 755 (1957); *Carland v. Allison*, 221 N.C. 120, 122, 19 S.E.2d 245, 246 (1942)).

Defendant argues the cases cited in the N.C.P.I. footnote only allow the jury the option to consider grossly inadequate consideration as an element of fraud, but do not require the jury to find fraud. Defendant's argument is misplaced.

Nearly one hundred and twenty years ago, our Supreme Court allowed a jury charge:

> If the award is so grossly and palpably inadequate, that is, so grossly and palpably small and out of all proportion to the amount of actual damage, as to shock the moral sense and conscience and to cause reasonable persons to say he got it for nothing, then the jury may consider this as evidence tending to show fraud and corruption or strong bias and partiality[.]

*Perry v. Ins. Co.*, 137 N.C. 402, 407, 49 S.E. 889, 890 (1905) (internal quotation marks omitted).

Our Supreme Court, in *Wall*, held:

> The controlling principle established by our decisions is that inadequacy of consideration is a circumstance to be considered by the jury in connection with other relevant circumstances on an issue of fraud, but inadequacy of consideration *standing alone* will not justify setting aside a deed on the ground of fraud. *However, if the inadequacy of consideration is so gross that it shows practically nothing was paid, it is sufficient to be submitted to the jury without other evidence.*

*Wall*, 261 N.C. at 723, 136 S.E.2d at 118 (citations omitted) (emphasis supplied).

*Leonard v. Power Co.* reaffirmed its prior holding from *Perry*:

The settled rule, which is applicable not only to awards, but to other transactions, is that mere inadequacy alone is not sufficient to set aside the award, but if the inadequacy be so gross and palpable as to shock the moral sense, it is sufficient evidence to be submitted to the jury on the issues relating to fraud and corruption or partiality and bias.

*Leonard v. Power Co.*, 155 N.C. 10, 16, 70 S.E. 1061, 1064 (1911) (citing *Perry*, 137 N.C. at 406, 49 S.E. at 890).

In *Leonard*, our Supreme Court found no error where an agent of the defendant who was trying to acquire an easement from the plaintiff testified: "he read the blue paper to her" while the plaintiff testified the paper read to her did not have the word "towers" in it. *Id.* at 15, 70 S.E. at 1063. The trial court further found:

There was evidence tending to prove that the agent of the defendant went to see her three times to procure her signature; that at first she refused to grant any easement to the defendant; that she was told that the defendant wanted to put up one or two poles on the land, across the six acres, and that the line of poles would not go near the big field; that the blue paper was drawn by the defendant, and the land described so indefinitely that one might be misled as to whether it conferred a right as to the six acres or the whole tract; that at that time the line had been run and staked on the land, and the defendant's agent knew this and did not inform the plaintiff of the fact, and that the agent gave the plaintiff the yellow paper, representing it to be a copy of the blue paper.

*Id.*

Our Supreme Court held: "In addition to this, the inadequacy of consideration was so gross that it afforded sufficient evidence of fraud to justify submitting the question to the jury, in the absence of other evidence." *Id.* The next year, our

Supreme Court again examined the inadequacy of consideration, and held:

> The rule amounts to this: The owner of tangible property or of a claim for damages may give it away or may sell it for less than its value, and the contract is valid in the absence of fraud, undue influence, or oppression; but if the contract is attacked as fraudulent, the inadequacy of consideration is evidence of fraud, and if gross, is alone sufficient to carry the case to the jury on the issue of fraud.

*Knight v. Vincennes Bridge Co.*, 172 N.C. 393, 398, 90 S.E. 412, 414 (1916). *Knight* and *Perry* were again cited and re-affirmed in *Hill v. Star Ins. Co.*, 200 N.C. 502, 509-10, 157 S.E. 599, 603 (1931).

Here the jury heard far more evidence than the gross "inadequacy of consideration standing alone". *Wall*, 261 N.C. at 723, 136 S.E.2d at 118. The jury in the first trial was also instructed on Plaintiff's burden to "prove by the greater weight of the evidence that the consideration given to the plaintiff for executing a deed" was "grossly inadequate under the circumstances." The admitted evidence tended to show: (1) the prior and current relationship of the parties; (2) Plaintiff's illiteracy and inability to read; (3) her assertion of a retained life estate; (4) Defendant's secretive instructions; and, (5) the circumstances surrounding her execution of the deed without it being read to her, not being advised to seek her own counsel, Defendant's attorney's failure to make himself available for her questions, allowing unlicensed staff to slough off her questions, and the failure to provide her a copy of what she had signed. N.C. Rev. R. Prof. Conduct 1.7 (2024). S*ee generally Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 604, 617 S.E.2d 40, 46-47 (2005) ("In

North Carolina, our courts have previously recognized the common interest or joint client doctrine, noting that as a general rule, where two or more persons employ the same attorney to act for them in some business transaction, their communications to him are not ordinarily privileged *inter sese*." (internal quotation omitted)), *aff'd*, 360 N.C. 356, 625 S.E.2d 779 (2006). Defendant's argument and reliance on *Wall* is overruled. 261 N.C. at 723, 136 S.E.2d at 118.

### 2. *Unconscionability*

Defendant further argues the law on unconscionability does not allow "grossly inadequate consideration" to be submitted to the jury as an independent issue. "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 102, 655 S.E.2d 362, 370 (2008) (citation omitted). Demonstrating substantive unconscionability involves "harsh, one-sided, and oppressive contract terms." *Id.* at 103, 655 S.E.2d at 370 (citation omitted).

Demonstrating procedural unconscionability "involves bargaining naughtiness in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." *Id.* at 102–03, 655 S.E.2d at 370 (internal quotation marks omitted) (citation omitted).

While a showing of both procedural and substantive unconscionability are required, "a finding [of unconscionability] may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural

unfairness, or vice versa." *Id.* at 103, 655 S.E.2d at 370.

Plaintiff's evidence, if believed by the jury, tended to satisfy both the procedural and substantive unconscionability of Defendant's and his attorney's and his staff's conduct surrounding the transaction and the execution of the deed. Since Plaintiff's evidence tended to support and show both prongs of procedural and substantive unconscionability, a jury's finding and conclusion of grossly inadequate consideration is consistent with North Carolina's law on unconscionability. Defendant's argument is without merit. *Id.*

### 3. *Erroneous Instruction*

Defendant argues the instruction on grossly inadequate consideration was administered in error. Defendant asserts error in the requirement where, if the jury found grossly inadequate consideration had taken place, the jury find in favor of Plaintiff. The instruction provided by the trial court read:

> Was the consideration given to the plaintiff for executing a deed to the defendant for the 2623 Keisler Dairy Road, Conover, real estate grossly inadequate under the circumstances?
>
> While mere inadequacy of consideration alone, ordinarily, is not sufficient to invalidate a deed, the consideration paid is an important and material fact in a trial involving fraud in procuring the execution of a deed. Evidence in respect to inadequate consideration may be considered by the jury in connection with other facts and circumstances offered in evidence.
>
> Consideration is something such as an act, a forbearance, or a return promise bargained for and received by a

promisor from a promise. What constitutes valuable consideration depends upon the context of a particular case.

On this issue the burden of proof is on the plaintiff. This means the plaintiff must prove, by the greater weight of the evidence, that the consideration given to the plaintiff for executing a deed to the defendant for the 2623 Keisler Dairy Road, Conover, real estate was grossly inadequate under the circumstances. To be grossly inadequate, the consideration must be so disproportionate to the value of what the plaintiff has given up by the conveyance that, under the same or similar circumstances, it would shock the conscience of a reasonable person.

You may consider any evidence you believe is relevant to consideration paid and value of property, the condition of the property, the value of outstanding taxes to the parties in this case, Ms. Lail's willingness to voluntarily sell the property, expressions relating to timing, motivations of Ms. Lail, lack of offer to purchase the property, and other evidence you consider relevant to the value of the property.

Finally, as to the second issue on which the plaintiff has the burden of proof, if you find by the greater weight of the evidence that the consideration given to the plaintiff for executing a deed to the defendant for the 2623 Keisler Dairy Road, Conover real estate was grossly inadequate under the circumstances, it would be your duty to answer this issue "Yes" in favor of the plaintiff.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of the defendant.

This jury instruction virtually mirrors N.C.P.I. – Civil 850.30 and is wholly consistent with our Supreme Court's holding in *Wall* as analyzed above. *Wall*, 261 N.C. at 723, 136 S.E.2d at 118 (citations omitted).

"[T]he preferred method of jury instruction is the use of the approved

guidelines of the North Carolina Pattern Jury Instructions." *Hammel v. USF Dugan, Inc.*, 178 N.C. App. 344, 347, 631 S.E.2d 174, 178 (2006) (citations omitted). Defendant's argument is overruled.

### 4. *Modifications to the Jury Instructions*

Defendant argues the trial court should have accepted his proposed modifications to the jury instructions, which would have instructed the jury to consider grossly inadequate consideration only as an aspect of actual fraud. Jury instructions are adequate "if they are sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause." *Chalmers v. Womack*, 269 N.C. 433, 436, 152 S.E.2d 505, 507 (1967).

The jury instructions conformed to the North Carolina Pattern Jury Instructions and were sufficiently comprehensive for the jury to resolve all factual issues raised by the competent and properly admitted evidence of intrinsic fraud. Defendant failed to show the trial court abused its discretion in instructing the jury using N.C.P.I. – Civil 850.30. Defendant's arguments are overruled.

## V. Recission, Directed Verdict, and Summary Judgment

Defendant argues the trial court erred in awarding recission and denying his motions for summary judgment and for a directed verdict. He again asserts intrinsic fraud is not an independent issue for submission to a jury. As analyzed and held above, intrinsic fraud, as evidenced by the party's relationship and understandings, the surrounding circumstances, and the grossly inadequate consideration, is a

separate and distinct action from intentional fraud, as outlined in N.C.P.I. – Civil 850.30. Upon properly admitted evidence, this issue may be independently submitted to a jury. *Wall*, 261 N.C. at 723, 136 S.E.2d at 118. Defendant's arguments are overruled.

## VI.    Conclusion

The trial court did not abuse its discretion in instructing the jury on grossly inadequate consideration, awarding recission, or err by denying Defendant's motions for summary judgment and for a directed verdict. Defendant has failed to carry his burden to show any abuse of discretion in the trial court's use of N.C.P.I. – Civil 850.30, based upon the properly admitted evidence, or reversible error in the jury's verdict or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Judge WOOD concurs.

Chief Judge DILLON dissents by separate opinion.

DILLON, Chief Judge, dissenting.

The issue in this case is whether Defendant William Tuck procured fee simple title from Plaintiff Lisa Lail in her home by fraud, essentially by representing to Plaintiff that the deed Defendant had prepared for Plaintiff to execute reserved for her a life estate. Plaintiff introduced plenty of evidence from which a jury could find that Defendant, indeed, did defraud her. Specifically, she presented evidence that she was illiterate and that Defendant deceived her into executing a deed conveying the fee simple interest in her $75,000 home to Defendant for less than $10,000, by representing to Plaintiff that the deed specified that she was retaining a life estate, such that she could live in home for the rest of her life.

In the first trial, the jury answered "no" to the question whether Defendant procured the deed from Plaintiff by fraud. But they were hung on a question presented to them as to whether Defendant paid Plaintiff a "grossly inadequate consideration." The trial court ordered a new trial on that second issue. Defendant, though, moved for summary judgment, which was denied.

In the second trial, the jury was merely asked whether Defendant paid a grossly inadequate consideration, which they answered in the affirmative. Based on this jury finding, the trial court entered its order declaring the deed void *ab initio*, thereby re-vesting Plaintiff with fee simple title.

For the reasoning below, I conclude that the trial court should have entered judgment for Defendant prior to the second trial based on the jury's verdict in the

first trial that he did not commit fraud.  In any case, I do not believe that a mere finding by jury that a buyer paid consideration it deems grossly inadequate mandates that the transaction be set aside, where there was otherwise no finding that the transaction was fraudulent.  Accordingly, I respectfully dissent.

## VII.    Analysis

The basis of my dissent is that I do not believe a mere finding that a seller who has agreed to sell her real estate can avoid her contract simply because the agreed-upon consideration is "way below" market; rather, it must *also* be found (based on this grossly inadequate consideration) that the buyer committed fraud.

Our Supreme Court has held that, generally, a contract is not valid unless supported by *some* amount of consideration.  *Holt v. Holt*, 304 N.C. 137, 142 (1981) (stating that a "contract [ ] must be supported by consideration.").

Our Supreme Court has long held that *unless there is fraud*, the courts will not look at *the adequacy of* the consideration:

> So long as it is something of real value in the eye of the law, whether or not the consideration is adequate to the promise is generally immaterial in the absence of fraud.  *The slightest consideration is sufficient to support the most onerous obligation*; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced.

*Young v. Bd. of Comm'rs of Johnston Cnty.*, 190 N.C. 52, 57 (1925) (emphasis added).

*See also Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 666 (1968) (reiterating that

unless there is fraud, courts "will not inquire into the adequacy of the consideration.").

A party can avoid a contract procured by fraud. However, "[t]he general rule

is that fraud is not presumed, but *must be proved* by the party alleging it." *Garris v.*

*Scott*, 246 N.C. 568, 575 (1957) (emphasis added).

Our Supreme Court has consistently held that the inadequacy of consideration

is evidence which can be considered *with other evidence* to show fraud. *Wall v. Ruffin*,

261 N.C. 720, 723 (1964). That is, the issue of fraud will not go to the jury if the only

evidence offered is the payment of inadequate consideration. However, "if the

inadequacy of consideration is so gross that it shows practically nothing was paid, it

is sufficient to be submitted to the jury without other evidence." *Id.*

Notwithstanding, the fact a jury finds a party paid grossly inadequate

consideration does not *necessitate* a finding of fraud. Our Supreme Court has

instructed,

> [t]he rule amounts to this: The owner of tangible property
> [ ] may give it away or may sell it for less than its value,
> and the contract is valid, in the absence of fraud, undue
> influence, or oppression; but, if the contract is attacked as
> fraudulent, the inadequacy of consideration is evidence of
> fraud, and, if gross, is alone sufficient *to carry the case to*
> *the jury on the issue of fraud.*

*Knight v. Vincennes Bridge Co.*, 172 N.C. 393, 398 (1916). *See also Leonard v.*

*Southern Power Co.*, 155 N.C. 10, 17 (1911) (stating a bargain to sell property for less

than its value is enforceable where the seller "wishes to do so, and the transaction is honest."). Or more recently,

> when parties have dealt with *at arms length* and contracted, the Court cannot relieve one of them because the contract has proven to be a hard one. Whether or not consideration is adequate to the promise, is generally immaterial *in the absence of fraud.*

*Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 722 (1962) (emphasis added).

It was not appropriate here for the trial court to declare the deed void where no jury has ever found that Defendant obtained the deed by fraud (where Defendant has denied that fraud occurred).

Again, I believe Plaintiff made a strong case that Defendant defrauded her into signing a deed without language that she was retaining a life estate. However, since Defendant denied the fraud, it was *her burden* to prove fraud *to a jury*. The first jury expressly found that Defendant did not defraud Plaintiff, answering "NO" on the following issue:

> "WAS THE EXECUTION OF A DEED BY THE PLAINTIFF FOR [her home] TO THE DEFENDANT PROCURED BY DEFENDANT'S FRAUD?"

4

*DILLON, C.J., Dissenting*

The jury's answer on this issue should have ended the matter.[1]  In my mind, the question presented to the first jury regarding whether there was grossly inadequate consideration paid was surplusage.  But there was no reason for Defendant to appeal on that issue, as the jury did not answer the question and Defendant won on the fraud issue anyway.  Further, the second jury was never asked whether Defendant committed fraud.

The majority suggests that the payment of grossly inadequate consideration is equivalent to a cause of action called "intrinsic fraud."  The majority cites the pattern jury instruction on grossly inadequate consideration.  I have no issue with this pattern jury instruction in general.  However, I do not believe, *standing alone*, the instruction resolves anything.  Rather, the instruction is appropriate when a jury is being asked to determine whether there was fraud and where there was no *other* evidence offered.  Consistent with our Supreme Court jurisprudence cited above, in such a case where no *other* evidence showing fraud is offered, it would not be

---

[1] Our Supreme Court has explained that fraud can "be broken into two categories, actual or constructive." *Terry v. Terry*, 302 N.C. 77, 82 (1981).  Actual fraud involves a falsely represented or concealed material fact.  *Id.* at 83.  Constructive fraud involves a situation where a party gains some advantage in a transaction by abusing "a confidential or fiduciary relationship."  *Id.*

Here, Plaintiff did not ask for separate instructions on whether there was "actual" or "constructive" fraud, but rather whether there was fraud at all.  It appears to me from the record that the issue in this matter concerned only "actual fraud."  Plaintiff did not seem to base her case on a contention that Defendant took advantage of a special relationship to talk her into agreeing to sell him her home without a life estate reserved for a low amount, which would be constructive fraud.  Rather, she seems to base her case on her contention that Defendant lied to her about what was in the deed, that it contained language reserving for herself a life estate, which would be actual fraud.

appropriate for the jury to answer the fraud question unless they first found that the consideration paid was grossly inadequate.

In any event, I could not find a North Carolina case where there was a recognized cause of action called "intrinsic fraud" based on the payment of grossly inadequate consideration. Rather, "intrinsic fraud" in our case law generally describes a way to attack *a prior judgment* where the judgment was based on fraudulent evidence. *See*, *e.g.*, *Smith v. Smith*, 334 N.C. 81, 86 (1993). And the cases I found where finding of fraud based on evidence of grossly inadequate consideration was sustained on appeal, the jury in each case was expressly asked to determine whether there was fraud, not merely whether they thought the consideration paid was grossly inadequate.