## S. C. LEONARD *v.* SOUTHERN POWER COMPANY.

(Filed 19 April, 1911.)

**1. Written Contracts—Parol Evidence—Fraud.**

One who can read and write and has been afforded opportunity to do so, and to inform himself, will not ordinarily be relieved of liability under a written contract he has thus signed, upon the ground that he did not understand its purport or that it was an improvident one.

**2. Same — Exceptions —Misrepresentation—Inducements—Confidential Relations—False Security.**

The ordinary rule that one will not be relieved from liability under his written contract which he could have read and informed himself of before signing cannot be invoked in behalf of one who lulls the other party to security, for the law does not require men to deal with each other upon the presumption that they are rascals.

**3. Same—"Caveat Emptor"—Equal Knowledge.**

Where the falsity of misrepresentation relied on to avoid liability under a contract is patent and the party seeking to avoid it accepts and acts upon it with his eyes open, he has no right to complain, for if the parties have equal information, the rule of *caveat emptor* applies unless the complaining party has fraudulently been prevented by some artifice or contrivance of the other party from making proper inquiry.

**4. Deeds and Conveyances — Right of Way — Electricity—Fraud—Parol Evidence—Confidential Relations—Misrepresentations.**

The owner of lands will not be held upon his written contract granting an easement to a power company to erect steel towers upon his land, when it is shown that the agent of the company was well known to him, and he relied upon the assurances of the agent that only a line of one or two poles and wires were included in the conveyances; that the agent of the company read the writing without mentioning the towers which were expressly specified therein, and that at the time actual work had been com-

menced to the knowledge of the agent and without that of the grantor upon a location of a line of towers and wires that would embrace a greater acreage than verbally represented, though the grantor could have read the grant and have informed himself of its contents at the time of signing it.

5. **Deeds and Conveyances—Contracts—Inadequate Consideration—Fraud—Evidence.**

When the inadequacy of the consideration for a contract or conveyance is so gross as to shock the conscience, it is in itself sufficient evidence of fraud to submit the case to the jury; but mere inadequacy thereof, while it may not alone justify setting aside a contract or other paper-writing, may be considered by the jury with other evidence on the question of fraud.

6. **Deeds and Conveyances—Fraud—Misrepresentation—Evidence—Requisites of Proof.**

In an action to recover damages of defendant power company for entering upon plaintiff's lands and erecting steel towers and stringing wires for conveying electricity for power purposes, wherein the defendant set up authority to do so under a written grant which the plaintiff sought to set aside for fraud in the procurement, a charge, in part, in this case held correct, that if the jury find that the representations made by defendant's agent were false to the knowledge of the defendant, and that they were made with intent and were calculated to deceive plaintiff, who relied thereupon and was thereby deceived and damaged, they should answer the pertinent issue in the affirmative.

APPEAL from *W. J. Adams, J.,* at the November Term, 1910, of DAVIDSON.

The plaintiff sues to recover damages, alleging that the defendant entered upon her land and erected steel towers and strung thereon wires conveying electricity at a high voltage, for the purpose of selling the same to operate factories and to furnish light.

The defendant admitted these facts, but claimed that it was acting lawfully by reason of the provisions of the following paper, spoken of by the witnesses as the "blue paper," which the plaintiff admitted she signed:

"STATE OF NORTH CAROLINA—COUNTY OF DAVIDSON.

"Know all men by these presents, that I, Mrs. Sallie C. Leonard, of said county and State, in consideration of the premises and of the sum of_____dollars to_____in hand paid by the

Southern Power Company, the receipt whereof is hereby acknowledged, do hereby grant unto the said Southern Power Company, its successors and assigns, the right, privilege and easement to go in and upon that tract of land situated in said county and State bounded by lands of L. A. Weise, J. W. Brown and others, and to construct and maintain in, upon and through said premises in a proper manner with poles, towers, wires and other necessary apparatus and appliances, a line for the purpose of transmitting power by electricity, together with the right, at all times, to enter upon said premises for the purpose of inspecting said lines and making necessary repairs and alterations thereon, together with the right to cut away and keep clear of said lines all trees and other like obstructions that may in any way endanger the proper operation of the same.

"In witness whereof, the said Mrs. Sallie C. Leonard does hereunto set her hand and seal, this 15th day of August, 1908.

"MRS. SALLIE C. LEONARD.  (Seal.)

"Witnesses: A. E. Hutchinson and Dave Leonard."

It was also admitted that another paper, spoken of as the "yellow paper," was signed at the same time by the plaintiff and the defendant, which is as follows:

"STATE OF NORTH CAROLINA—COUNTY OF DAVIDSON.

"This agreement made this 15th day of September, 1908, between the Southern Power Company, party of the first part, hereinafter called the 'power company,' and Mrs. Sallie Leonard, party of the second part, hereinafter called the 'owner'—

"Witnesseth: That it is hereby agreed between the parties hereto that the power company shall pay one dollar ($1) for each and every pole or support placed, and one dollar ($1) per cord for each and every cord of wood cut on the premises of said owner, the wood to be cut by and to remain the property of the owner, together with all actual damages to the crops of said owner occasioned by the construction or repairing of the transmission lines; provided that said owner presents a written claim therefor within sixty days after the act causing such damages.

"In witness whereof, the said parties hereto have. hereunto set their hands and seals the day and year first above written.

　　　　　"SOUTHERN POWER COMPANY,

　　　　　　　By A. E. Hutchison,　　　(Seal.)

　　　　　　　*Right-of-Way Agent.*

　　　　　"MRS. SALLIE C. LEONARD.　　(Seal.)

"Sealed and delivered in the presence of: Dave Leonard."

The plaintiff alleged that her signature to these papers was procured by fraud, which was denied by the defendant.

The following are the issues and the responses thereto:

1. Is the plaintiff the owner of the lands described in the complaint? Answer: Yes.

2. Did defendant Southern Power Company enter upon the said lands of plaintiff and commit the acts therein and appropriate the same to its use, as alleged in the complaint? Answer: Yes.

3. Did plaintiff execute the paper-writing set up in answer? Answer: Yes.

4. Does said paper-writing authorize the erection and maintenance of defendant's line across plaintiff's lands, as alleged in answer? Answer: Yes, across the six acres.

5. Was the execution of said paper-writing procured by fraud and misrepresentation, as alleged in complaint? Answer: Yes.

6. What damage, if any, is plaintiff entitled to recover of defendant on account of its appropriation of her land, as alleged in complaint? Answer: Eighteen hundred dollars ($1800).

There were six towers erected on the land, and under the terms of the blue paper the plaintiff would be entitled to $6 therefor.

The defendant has no exception to the issue of damages, and it does not appear that it asked the presiding judge to set it aside or to reduce it as excessive.

It has abandoned all exceptions except the one to the refusal of the judge to charge the jury that, upon the whole evidence, they must answer the issue of fraud, No.

The plaintiff admitted that she could read and write and was educated, and that her son, twenty-eight years of age, who was

intelligent and could read and write, was present when she signed the papers.

The plaintiff and the witness Hutchison had known each other before this transaction.

*S. E. Williams and Emery E. Raper for plaintiff.*
*Osborne, Lucas & Cocke and Walser & Walser for defendant.*

ALLEN, J., after stating the case. We are not disposed to modify the principle laid down in *Dellinger v. Gillespie,* 118 N. C., 737, and many other cases, that the law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so. "The law aids those who are vigilant, not those who sleep on their rights."

This rule cannot be invoked, however, in behalf of one who induces sleep and lulls to security, nor does it require men to deal with each other upon the presumption that they are rascals, as is clearly stated in *Walsh v. Hall,* 66 N. C., 238: "The law does not require a prudent man to deal with every one as a rascal, and demands covenants to guard against the falsehood of every representation which may be made, as to facts which constitute material inducements to a contract. There must be a reasonable reliance upon the integrity of men, or the transactions of business, trade and commerce could not be conducted with that facility and confidence which are essential to successful enterprise, and the advancement of individual and national wealth and prosperity. The rules of law are founded on natural reason and justice and are shaped by the wisdom of human experience, and upon subjects like the one which we are considering, they are well defined and settled. . . . . No specific rule can be laid down as to what false representations will constitute fraud, as this depends upon the particular facts which have occurred in each case, the relative situation of the parties and their means of information. Examples are given in the books which have established some general principles which will apply to most cases that may arise. If the falsehood of the misrepresentations is *patent* and a party accepts and acts upon it with

'his eyes open,' he has no right to complain. If the parties have equal means of information, the rule of *caveat emptor* applies, and an injured party cannot have redress, if he fails to avail himself of the sources of information which he may readily reach, *unless he has been prevented from making proper inquiry by some artifice or contrivance of the other party."*

The same principle is stated as to a kindred subject in *Hill v. Brown,* 76 N. C., 125: "The maxim *caveat emptor* does not apply in cases where there is actual fraud," and has been approved in *Smathers v. Gilmer,* 126 N. C., 759; *May v. Loomis,* 140 N. C., 356; *Griffin v. Lumber Co.,* 140 N. C., 518, and numerous other cases. Under these authorities, we think there was evidence of fraud, which the judge properly submitted to the jury.

The plaintiff lived at Spencer and not on the land, and she had known the agent of the defendant before she entered into this transaction.

He testified that he read the blue paper to her, while she testified that the paper read to her did not have the word "towers" in it. There was evidence tending to prove that the agent of the defendant went to see her three times to procure her signature; that at first she refused to grant any easement to the defendant; that she was told that the defendant wanted to put up one or two poles on the land, across the six acres, and that the line of poles would not go near the big field; that the blue paper was drawn by the defendant, and the land described so indefinitely that one might be misled as to whether it conferred a right as to the six acres or the whole tract; that at that time the line had been run and staked on the land, and the defendant's agent knew this and did not inform the plaintiff of the fact, and that the agent gave the plaintiff the yellow paper, representing it to be a copy of the blue paper.

In addition to this, the inadequacy of consideration was so gross that it afforded sufficient evidence of fraud to justify submitting the question to the jury, in the absence of other evidence.

In *Byers v. Surget,* 19 How., 311, the Supreme Court of the United States says: "To meet the objection made to the sale

in this case, founded on the inadequacy of the price at which the land was sold, it is insisted that inadequacy of consideration, singly, cannot amount to proof of fraud. This position, however, is scarcely reconcilable with the qualification annexed to it by the courts; namely, unless such inadequacy be so gross as to shock the conscience; for this qualification implies necessarily the affirmation, that if the inadequacy be of a nature so gross as to shock the conscience, it will amount to proof of fraud"; and again, in *Hume v. United States,* 132 U. S., 411: "It (fraud) may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses and not under delusion, would make on the one hand, and as no honest and fair man would accept on the other."

Our Court, speaking through *Justice Brown,* so declares the law in reference to awards and other transactions, in *Perry v. Insurance Co.,* 137 N. C., 406. He says: " 'Where there is a charge of fraud or partiality made against an award, the fact that it is plainly and palpably wrong would be evidence in support of the charge, entitled to greater or less weight according to the extent or effect of the error and the other circumstances of the case. There might be a case of error in an award so plain and gross that a court or jury could arrive only at the conclusion that it was not the result of an impartial exercise of their judgment by the arbitrators.' *Goddard v. King,* 40 Minn., 164. The settled rule, which is applicable not only to awards, but to other transactions, is that mere inadequacy alone is not sufficient to set aside the award, but if the inadequacy be so gross and palpable as to shock the moral sense, it is sufficient evidence to be submitted to the jury on the issues relating to fraud and corruption or partiality and bias."

Where there is inadequacy of consideration, but it is not gross, it may be considered in connection with other evidence upon the issue of fraud, but will not, standing alone, justify setting aside a contract or other paper-writing on the ground of fraud.

What we have said applies to persons bargaining with each other and seeking to reach an agreement as to a fair consideration, and does not prevent one from giving away his property

or selling it for less than its value, if he wishes to do so, and the transaction is honest.

The presiding judge presented the case to the jury clearly and accurately. He said: "It is true that a person who can do so is generally required to read a paper before signing, and his failure to do so is negligence for which the law affords no redress. This rule does not apply, however, in case of positive fraud or false representation made by another party, by which the person signing the paper is lulled into security or thrown off his guard and prevented from reading it, and induced to rely upon such false representations or fraud. If, then, you find from the evidence and by its greater weight that the defendant's agent represented to the plaintiff that it was the present, existing purpose of the defendant to place on the six-acre tract of her land, and not in her fields, poles and wires such as are used in the construction and operation of telephone or telegraph lines, and said nothing about the erection of towers, you may consider such representations, together with the circumstances arising from the evidence, in finding whether there was positive fraud by the defendant in procuring the execution of the papers. And if you further find that he pretended to read to her Exhibit A and did not read the provision as to the erection of towers, lulled her into security and threw her off her guard by the positive assurance that only such poles and wires would be placed on the land referred to, and that she relied upon such assurance of the agent, and for these reasons did not herself read the paper, the circumstances that the plaintiff did not read Exhibit A (if you find that she did not read it) would not be imputed to her as such negligence in the execution of the paper as would leave her without legal redress for that reason. And if you further find that the representations made by the defendant's agent were false to the knowledge of the defendant, and that they were made with intent to deceive the plaintiff, and were calculated to deceive her, and that the plaintiff relied upon these representations, and that she was thereby deceived, and caused to suffer damage, your answer to the fifth issue will be, Yes. If you do not so find, your answer will be, No."

We find no error.　　　　　　　　　　　　Affirmed.