IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-964

Filed: 21 April 2020

Hoke County, No. 19 CVS 326

PAMELA GAY, Executrix of the Estate of JOAN R. FRANKLIN, Plaintiff,

v.

SABER HEALTHCARE GROUP, L.L.C., and AUTUMN CORPORATION, d/b/a Autumn Care of Raeford, Defendants.

Appeal by defendants from order entered 11 June 2019 by Judge Mary Ann Tally in Hoke County Superior Court. Heard in the Court of Appeals 17 March 2020.

> *Henson Fuerst, P.A., by Rachel A. Fuerst and Shannon M. Gurwitch, and Britton Law, LLP, by Rebecca J. Britton, for plaintiff-appellee.*

> *Parker Poe Adams & Bernstein LLP, by Bradley K. Overcash and Daniel E. Peterson, for defendants-appellants.*

ARROWOOD, Judge.

Saber Healthcare Group, L.L.C. and Autumn Corporation ("defendants") appeal from an order denying their Motion to Compel Arbitration and Stay Proceedings. For the following reasons, we affirm the trial court's order.

I.     Background

The central issue in this case involves the interpretation of contractual language in a series of documents signed in the admissions process for defendants' elder care facility. Janine Lightner ("Ms. Lightner") was referred to Autumn Care of

Raeford, defendants' facility, ("the facility" or "Autumn Care") after determining that her mother's health required more advanced elder care than that which could be provided in her current placement. Ms. Lightner's mother, Joan R. Franklin ("decedent"), had lived for five years in a nearby assisted living facility following a stroke. Decedent also suffered from Parkinson's disease and Lewy Body dementia. On 18 April 2017, Ms. Lightner signed the relevant admission paperwork and decedent was admitted to Autumn Care. Decedent subsequently suffered from a series of falls while at Autumn Care and died on 14 June 2017.

These events gave rise to the cause of action in this case. Pamela Gay ("plaintiff"), decedent's other daughter, is the executrix of her estate. On 30 April 2019 plaintiff filed a complaint on behalf of decedent's estate, asserting claims of negligence and wrongful death arising from defendants' allegedly improper response to decedent's falls. In response to plaintiff's complaint, defendants filed a Motion to Compel Arbitration and Stay Proceedings. Defendants' motion claimed that plaintiff was required to arbitrate any dispute related to care of decedent because Ms. Lightner signed an arbitration agreement on the day decedent was admitted to the facility.

Plaintiff filed a memorandum in opposition to defendants' motion, maintaining (a) that Ms. Lightner never entered an arbitration agreement with defendants on the day of decedent's admission to Autumn Care, or, alternatively, (b) that any such

agreement was void because defendants owed decedent a fiduciary duty at the time her representative signed the admissions paperwork. Among other items, plaintiff attached Ms. Lightner's affidavit and the relevant admissions paperwork as exhibits to her memorandum in opposition to defendants' motion.

On 10 June 2019, the trial court held a hearing on defendants' motion to compel arbitration. Plaintiff introduced the exhibits from her memorandum into evidence. Defendants presented no evidence at the hearing in support of their contention that the parties had agreed to arbitration. Plaintiff's evidence tended to show the following.

Ms. Lightner's affidavit detailed the process she underwent to admit decedent to Autumn Care. Ms. Lightner averred that she toured the facility on 10 April 2017. She returned to the facility with decedent on 18 April 2017. After further reviewing the facility, Ms. Lightner and decedent met with two members of Autumn Care's admissions staff to complete the admission application and other documents. Ms. Lightner alleged one of the staff members informed her the facility's admissions process was new, "it was her first day in admissions at Autumn Care," and the other staff member was there "to train her." Ms. Lightner stated that "the whole process seemed disorganized: almost like they did not know what they were doing."

Ms. Lightner asserted the facility staff presented her with "an iPad and a few loose papers with the admissions information." Most of the documents Ms. Lightner

signed were presented on the iPad "but some were on random loose pieces of paper." She was presented some pages of paper documents to sign that appeared to be ripped out of a binder of other materials. Many documents presented on the iPad were in "footnote-sized font" and could not be magnified for ease of reading. Such documents included the signature pages of an "Admission Agreement" ("the admission agreement") and a separate "Resident and Facility Arbitration Agreement" ("the arbitration agreement").

Ms. Lightner signed both of these documents, but stated that the pages of the arbitration agreement preceding its signature page were not presented to her before or after her signature on the day decedent was admitted to Autumn Care. She stated that the facility's admissions staff "did not explain documents in detail." She did not recall the staff "ever discussing any arbitration agreement or using the words arbitration agreement at any point."

Ms. Lightner requested printed copies of the documents she signed on the iPad, but the employees handling her onboarding were unable to furnish physical copies. Months after decedent's admission, she received what she characterized as a disorganized "packet of paperwork." She did not recall ever seeing the full arbitration agreement in that packet and asserted she did not see it until after decedent's death.

In its order, the trial court made a finding adopting the version of events averred in Ms. Lightner's affidavit:

> Ms. Lightner's sworn affidavit described the events that transpired when she signed the admission paperwork for [decedent]. The content and format of the documents she signed reveals that only the signature paragraph . . . was presented to Ms. Lightner for electronic signature in very small print on an iPad and pages 1 and 2 of the purported 3 page document were never available, shown or explained to Ms. Lightner prior to her electronic signature. Pages 1 and 2 of the purported arbitration agreement were provided, amongst a mixed up package of documents . . . at a later time after [decedent] was residing at Defendant's [sic] facility. Ms. Lightner did not remember ever seeing the purported arbitration agreement until her attorney showed it to her long after [decedent] had passed away.

The trial court also found that defendants had presented no evidence in support of their claim that the parties had agreed to arbitrate. Reviewing the admission agreement and the arbitration agreement's signature page, the trial court found the following:

> The Admission Agreement, page 8, paragraph J, . . . incorporated into the Admission Agreement by reference: "all documents You signed or received in the Admission Packet during the admission process to the facility."
>
> . . . .
>
> Defendants' Admission Agreement, specifically within the terms of the Admission Agreement's signature page, states: "The resident/representative and facility hereby mutually agree to irrevocably waive any and all rights to a trial by jury (while expressly preserving any and all rights to a bench trial) . . . ."

Based upon these findings, the trial court concluded that: (1) the admission agreement and arbitration agreement were internally conflicting, "one purporting to

agree to expressly reserve the right to a bench trial and another purporting to agree to arbitration[;]" and, (2) defendants owed and violated a fiduciary duty to provide decedent specialized care. On these grounds, the trial court denied defendants' motion to compel arbitration. Defendants timely filed their notice of appeal to this Court.

## II. Jurisdiction

"An order denying defendants' motion to compel arbitration is not a final judgment and is interlocutory. However, an order denying arbitration is immediately appealable because it involves a substantial right, the right to arbitrate claims, which might be lost if appeal is delayed." *Raper v. Oliver House, LLC*, 180 N.C. App. 414, 418-19, 637 S.E.2d 551, 554 (2006) (internal quotation marks and citations omitted). This Court possesses jurisdiction over this interlocutory appeal. N.C. Gen. Stat. §7A-27(b)(3)(a) (2019).

## III. Standard of Review

"A dispute can only be settled by arbitration if a valid arbitration agreement exists." *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004) (citation omitted). "If a party claims that a dispute is covered by an agreement to arbitrate but the adverse party denies the existence of an arbitration agreement, the trial court shall determine whether an agreement exists." *Id.* (citation omitted). "The party seeking arbitration must show that the parties mutually agreed to arbitrate

their disputes. The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary." *Id.* (internal quotation marks, alterations, and citations omitted). "The trial court's determination of whether the language of a contract is ambiguous is a question of law" that we review *de novo*. *Salvaggio v. New Breed Transfer Corp.*, 150 N.C. App. 688, 690, 564 S.E.2d 641, 643 (2002) (citation omitted).

IV.     Discussion

Defendants argue that the trial court erred by denying their motion to compel arbitration based upon its reasoning that (a) the relevant provisions were ambiguous regarding an agreement to arbitrate disputes or, alternatively, (b) that even an unambiguous arbitration agreement would have been unenforceable due to a fiduciary duty owed to decedent at the time the agreement was made.

We hold that the trial court did not err in denying defendants' motion. The findings of fact in its order are supported by competent evidence. These findings in turn support its legal conclusion that the arbitration agreement was ambiguous, and therefore defendants failed to meet the burden of proving the existence of an agreement to arbitrate between plaintiff and defendants at the time Ms. Lightner signed the documents at issue. Because this conclusion of law is supported, we do

not reach the court's second ground for denying defendants' motion regarding the breach of a purported fiduciary duty owed by defendants.

A.     Findings of Fact

In its order, the trial court found that defendants presented no evidence to refute the claims in Ms. Lightner's affidavit or otherwise support their contention that the parties had agreed to arbitrate. This finding is supported by the record. Defendants did not attach the arbitration agreement to their motion, furnish any affidavit supporting its existence or inclusion within the documents viewed and signed by Ms. Lightner, or even attempt to enter the document itself into evidence. The document itself was furnished by plaintiff as an exhibit to her memorandum opposing arbitration. The trial court also made findings accepting the version of events averred in Ms. Lightner's affidavit. Because they were supported by the affidavit, these findings are conclusive on appeal. *See Slaughter*, 162 N.C. App. at 461, 591 S.E.2d at 580.

The pages of the arbitration agreement preceding its signature page, which Ms. Lightner was not shown at the time of signing, detailed the requirements to arbitrate any dispute arising with Autumn Care. The signature page had headings reading "Resident and Facility Arbitration Agreement" and "Resident Understanding & Acknowledgement Regarding Arbitration" in small font, but made no further reference to the details of arbitration. It simply stated that "[t]he parties understand

that by entering into this agreement the parties are giving up their constitutional right to have any claim decided in a court of law before a judge and a jury, as well as any appeal from a decision or award of damages."

The court found that, in contrast, the signature page of the admission agreement stated that the parties "mutually agree to irrevocably waive any and all rights to a trial by jury (while expressly preserving any and all rights to a bench trial)[.]" The court also found that the admission agreement contained a clause "incorporat[ing] into the Admission Agreement by reference: 'all documents [Ms. Lightner] signed or received in the Admission Packet during the admission process to the facility.'" These findings are also supported by the record evidence.

## B.     Conclusion of Law

Based on its findings concerning the aforementioned clauses in the materials presented to Ms. Lightner on the day she signed the relevant documents, as well as the version of events Ms. Lightner averred in her affidavit, the trial court found that "the Admission Agreement Signature Page and Resident and Facility Arbitration Agreement[ ] are internally in conflict with one another, one purporting to agree to expressly reserve the right to a bench trial and another purporting to agree to arbitration." Furthermore, the court found that "Defendants' use of the terms 'jury trial' and 'bench trial' within the same sentence [of the admission agreement's signature page] would not give a reasonable person notice of arbitration and would

not be understood by someone who does not have training in the interpretation of legal documents." These findings are more appropriately read as a conclusion of law that no valid agreement to arbitrate was formed between the parties, due to an ambiguity regarding the right to have any dispute determined by a court of law. *See In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) ("[A]ny determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law.") (internal citations omitted).

> An ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties. Stated differently, a contract is ambiguous when the writing leaves it uncertain as to what the agreement was. The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous.

*Salvaggio*, 150 N.C. App. at 690, 564 S.E.2d at 643 (internal quotation marks, alterations, and citations omitted). "[I]t is a fundamental rule of contract construction that the courts construe an ambiguous contract in a manner that gives effect to all of its provisions, if the court is reasonably able to do so. Contract provisions should not be construed as conflicting unless no other reasonable interpretation is possible." *Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 94, 414 S.E.2d 30, 34 (1992) (internal quotation marks, alterations, and citations omitted). Where no other reasonable, nonconflicting interpretation is possible, "the court is to construe the ambiguity against the drafter—the party responsible for choosing the

questionable language." *Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 476, 528 S.E.2d 918, 921 (2000) (citation omitted).

Defendants cite to *Rouse* and *Internet East, Inc. v. Duro Communications, Inc.*, 146 N.C. App. 401, 553 S.E.2d 84 (2001), arguing that similarities between the arbitration agreements and clauses governing litigation in those cases and the instant case compel a conclusion that their agreement with plaintiff to arbitrate disputes was unambiguous. We find these cases inapposite.

In *Internet East*, we held that a forum selection clause granting "courts of North Carolina . . . sole jurisdiction over any disputes" did not conflict with an arbitration clause in the same contract. *Id.* at 403, 553 S.E.2d at 86. We reasoned that the clauses could be read such that the "forum selection clause should . . . be triggered only when a court is needed to intervene for those judicial matters that arise from arbitration and when the parties have agreed to take a particular dispute to court instead of resolving it by arbitration." *Id.* at 407, 553 S.E.2d at 88. Based upon similar reasoning, in *Rouse* our Supreme Court held that choice of law and consent to jurisdiction clauses did not conflict with an arbitration clause within the same contract. 331 N.C. at 94-97, 414 S.E.2d at 33-35.

Defendants argue that these cases support a nonconflicting reading of the admission agreement's clause preserving the right to a bench trial and the arbitration agreement's signature page waiving the right to bring disputes before a court of law.

Defendants contend that these clauses should be interpreted such that arbitration of disputes is required, but "in the event of judicial intervention, the Admission Agreement stipulates that neither party would seek a jury trial, and instead, would seek a bench trial." We are not persuaded. Unlike the forum selection, choice of law, and consent to jurisdiction clauses at issue in *Rouse* and *Internet East*, here the admission agreement's clause expressly reserving the right to a bench trial cannot be read in harmony with the arbitration agreement's clause expressly foreclosing the same. Given the trial court's finding that the pages of the arbitration agreement providing all the details of the procedures for arbitration were not presented to Ms. Lightner when she signed its signature page, such an interpretation would be unreasonable.[1]

The dissent bases its argument in large part upon our precedent holding that parties to an arm's length contractual agreement are charged with knowledge and understanding of the contents of documents they sign, when the parties could have reviewed the provisions from which they seek relief. *See, e.g., Leonard v. Power Co.*, 155 N.C. 10, 13-14, 70 S.E. 1061, 1064 (1911). This principle misses the point: The trial court found that Ms. Lightner was not presented with the contents of the

---

[1] We also note that Part IV, Section K of the admission agreement provides that headings in the contract "are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement." Thus, the two references to "arbitration" in the headings on the arbitration agreement's signature page are of no effect. The signature page thus fails to mention arbitration at all.

arbitration agreement other than the signature page and, despite her requests, was unable to avail herself of full printed copies for review at the time she signed the contracts. Thus, this case is not one in which a party had constructive notice of and opportunity to review a contractual provision from which they seek relief. The facts of the instant case belie the dissent's reliance on this principle.[2]

The trial court found that Ms. Lightner was not presented with or able to review the contents of the arbitration agreement other than its signature page. The

---

[2] Furthermore, ignoring the fact that no objection was made below nor error raised on appeal, the dissent mistakenly suggests that the parol evidence rule would prohibit the trial court's consideration of Ms. Lightner's affidavit in determining issues of contract formation and ambiguity. The parol evidence rule is inapplicable to such determinations. *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 560, 681 S.E.2d 770, 774 (2009) ("[I]f the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent, not to contradict, but to show and make certain what was the real agreement between the parties.") (internal quotation marks and citation omitted); *Z.A. Sneeden's Sons, Inc., v ZP No. 116, L.L.C.*, 190 N.C. App. 90, 101, 660 S.E.2d 204, 211 (2008) ("Extrinsic evidence as to the circumstances under which a written instrument was made has been held to be admissible in ascertaining the parties' expressed intentions, subject to the limitation that extrinsic evidence is not admissible in order to give the terms of a written instrument a meaning of which they are not reasonably susceptible.") (internal quotation marks, alteration, and citation omitted); *Ingersoll v. Smith*, 184 N.C. App. 753, 755, 647 S.E.2d 141, 143 (2007) ("The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict the terms of an integrated written agreement, though an ambiguous term may be explained or construed with the aid of parol evidence.") (internal quotation marks and citations omitted).

The dissent's implied invocation of the parol evidence rule to the circumstances of the instant case would have illogical and unjust consequences. Under its conception of the doctrine, once a party signs a written document, they are barred from contesting their lack of agreement to later-furnished, additional terms not within the document presented to them at the time of signing. Such an application of the parol evidence rule would invite fraud and upheave the well-settled jurisprudence of contract formation.

arbitration agreement's signature page provides no detail on the suggested methods of nonjudicial resolution of disputes between the parties. It fails to even mention arbitration. Rather, the signature page only provides that the parties waive the right to a trial. In contrast, the admission agreement expressly waives the right to a jury trial and reserves the right to a bench trial. Based upon these findings, the trial court correctly concluded that the parties' arbitration agreement was ambiguous as a matter of law. *See Novacare,* 137 N.C. App. at 476, 528 S.E.2d at 921 (construing contractual ambiguity against drafting party). Therefore, the trial court did not err by denying defendants' motion to compel arbitration.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order denying defendants' Motion to Compel Arbitration and Stay Proceedings.

AFFIRMED.

Judge BRYANT concurs.

Judge TYSON dissents by separate opinion.

No. COA19-964 – *Gay v. Saber Healthcare Grp., L.L.C.*

TYSON, Judge, dissenting.

The majority's opinion ignores fundamental principles and interpretation of contract law, disregards our nation's and our state's public policies in favor of arbitration, and misapplies the *de novo* standard of review to affirm the trial court's order. The trial court's order is properly reversed and remanded for entry of an order to stay the proceeding and to compel arbitration as the parties agreed. I respectfully dissent.

## I. Standard of Review

Our review of the trial court's order and the Admission and Arbitration Agreements is *de novo*. Precedents governing our review of contracts are long established:

> Because the law of contracts governs the issue of whether there exists an agreement to arbitrate, the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes. The trial court's determination of whether a dispute is subject to arbitration is a conclusion of law reviewable *de novo*.

*T.M.C.S., Inc. v. Marco Contr'rs, Inc.*, 244 N.C. App. 330, 339, 780 S.E.2d 588, 595 (2015) (citations, alterations, and internal quotation marks omitted).

Our Supreme Court held:

> [W]here the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing. Accordingly, all prior and contemporaneous negotiations in

respect to those elements are deemed merged in the written agreement. And the rule is that, in the absence of fraud or mistake or allegation thereof, parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent.

*Neal v. Marrone,* 239 N.C. 73, 77, 79 S.E.2d 239, 242 (1953) (citations omitted). More recently, this Court reiterated:

It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument. When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties.

*Bank of Am., N.A. v. Rice*, 230 N.C. App. 450, 456, 750 S.E.2d 205, 209 (2013) (citation omitted).

## II. Existence of the Arbitration Agreement

Our Supreme Court has also held:

North Carolina has a strong public policy favoring the settlement of disputes by arbitration. Our strong public policy requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. This is true whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Johnston County v. R. N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992) (citation and internal quotation marks omitted). "A dispute can only be settled by

2

arbitration if a valid arbitration agreement exists. The party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes." *Raper v. Oliver House, LLC*, 180 N.C. App. 414, 419, 637 S.E.2d 551, 554 (citations omitted). "[A]ny doubt concerning the *existence* of such an agreement must also be resolved in favor of arbitration." *Rouse*, 331 N.C. at 92, 414 S.E.2d at 32 (emphasis supplied).

This policy in favor of arbitration has also been codified as national policy in federal law. *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 785 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 179 L. Ed. 2d 742, 750 (2011) (explaining Congress enacted the Federal Arbitration Act "in 1925 in response to widespread judicial hostility to arbitration agreements").

The majority's opinion concludes Defendants failed to establish the existence of an Arbitration Agreement between the parties. Purportedly reviewing the agreements *de novo* and as a matter of law, the majority's opinion affirms the trial court's order and its erroneous conclusion of law that "the arbitration agreement was ambiguous, and therefore defendants failed to meet the burden of proving the existence of an agreement to arbitrate between plaintiff and defendants at the time Ms. Lightner signed the documents at issue." This analysis does not confine itself to

3

the four corners of the separate agreements and apply the plain language *de novo* as a matter of law. *See Bank of Am., N.A.*, 230 N.C. App. at 456, 750 S.E.2d at 209.

This conclusion is also unsupported by the four corners of the written agreements. The trial court neither disputes nor concludes the proffered and admitted evidence is invalid or insufficient to prove the Arbitration Agreement. If it had, the Admission Agreement and the asserted "non-existent" Arbitration Agreement could not be "internally in conflict with one another."

Here, Plaintiff submitted all the evidence needed to prove not only the existence of, but also mutual assent between the parties to, the Arbitration Agreement. This agreement is separate and distinct from the Admission Agreement. Plaintiff submitted into evidence the Admission Agreement and the Arbitration Agreement, signed by Lightner as Decedent's authorized representative, along with her affidavit.

The Arbitration Agreement contains multiple pages. Lightner avers several pages were never been shown to her. Even if so, the signature page of the Arbitration Agreement, which is admittedly signed by Lightner as Decedent's representative, agrees to arbitration as the exclusive forum to resolve any disputes arising between the parties and contains a complete waiver of the right to trial by judge and a jury in a court of law. It also states and admonishes the signatory prior to signing: "**NOT A CONDITION OF ADMISSION – READ CAREFULLY**."

4

Our Supreme Court held over one hundred years ago that, "the law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so." *Leonard v. Power Co.*, 155 N.C. 10, 14, 70 S.E. 1061, 1063 (1911).

"The interpretation of the terms of an arbitration agreement are governed by contract principles and parties may specify by contract the rules under which arbitration will be conducted. Persons entering contracts have a duty to read them and ordinarily are charged with knowledge of their contents." *Raper*, 180 N.C. App. at 420-21, 637 S.E.2d at 555 (citations, alterations, and internal quotation marks omitted).

Once the documents are signed, any events preceding the execution and signatures are merged into the final document, which becomes the final expression of the parties' intent. *Neal,* 239 N.C. at 77, 79 S.E.2d at 242. "[P]arol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent." *Id.*

The majority's opinion asserts the parol evidence rule is inapplicable to the issue in this case, and claims "no objection was made below nor error raised on appeal." Defendant's appeal challenges and brings all of the trial court's conclusions

of law, which fail to enforce the parties' two separate, distinct, written, and executed contracts, before us for *de novo* review. Both agreements were executed by the same parties, at the same time, at the same place. Defendant provided performance and Plaintiff accepted the benefits and burdens under both agreements.

The four corners of the documents are properly before us in reviewing the trial court's order failing to enforce the agreements. Plaintiff has asserted none of the traditional contract defenses, e.g., forgery, fraud, duress, incapacity, or unconscionability, to excuse enforcement of the express agreements her decedent's representative admittedly signed. The denial of the parties' agreed-upon forum of arbitration and the *de novo* proper construction of these agreements is clearly before us.

In *Evangelistic Outreach Ctr. v. General Steel Corp.*, 181 N.C. App. 723, 726, 640 S.E.2d 840, 843 (2007), the proponent of the alleged arbitration agreement submitted in its unverified motion a one-page purchase order signed by the party to be charged, which noted the agreement was subject to the terms and conditions on its face and on the reverse side. The proponent also submitted a copy of the reverse side, which contained an arbitration clause. *Id.*

The party opposing arbitration submitted a verified response denying receipt of the reverse side. *Id.* at 727, 640 S.E.2d at 843. Both parties submitted affidavits in support of their positions. *Id.* at 726-27, 640 S.E.2d at 843. This Court upheld the

6

trial court's conclusion that "proof of the very *existence* of an arbitration agreement was lacking." *Id.* at 727, 640 S.E.2d at 843 (emphasis original). The reasoning in that case is inapplicable to the admitted facts and plain meanings of the provisions before us.

Plaintiff submitted all the evidence needed to prove the existence of, her signature on, and the parties' mutual assent to the Arbitration Agreement, which is separate and distinct from the Admission Agreement. The law will enforce agreements as written and signed. Plaintiff is not relieved from liability upon a written contract, upon allegation Lightner did not read or "understand the purport of the writing" when she could have informed herself and failed to do so, or simply have refused to sign the Arbitration Agreement without jeopardizing her mother's admission to the Facility. *See Leonard*, 155 N.C. at 14, 70 S.E. at 1063.

Parties to private contracts are free to set forth, demand, and enforce the time, place, and type of forum where disputes between the parties are to be resolved. *See Rouse*, 331 N.C. at 92, 414 S.E.2d at 32. Nothing in our law requires or compels that choice to be a judicial or even a public forum, or to include all options or remedies available in that public or private forum. *See id.* Sufficient evidence shows an express Arbitration Agreement exists, signed by Decedent's representation and Defendants while Decedent was present, which she was free to reject without risking her non-admission to the Facility. Plaintiff cannot successfully argue she is not bound by

terms stated on the very page Decedent's representative admittedly signed with her mother present. *See Leonard*, 155 N.C. at 14, 70 S.E. at 1063.

### III. Construing the Agreements

### A. "Internally in Conflict"

The trial court concluded and the majority's opinion agrees, the separate and distinct Admission Agreement and the Arbitration Agreement were "internally in conflict with one another." The Admission Agreement preserves the right to a bench trial to the parties, but waives both parties' right to a trial by jury and to punitive damages. The Arbitration Agreement is separate from the Admission Agreement and declares arbitration to be the exclusive and mandatory method for dispute resolution between the parties and waives both parties' constitutional rights to a bench trial before a judge and a trial by jury.

The Admission Agreement provides, in pertinent part:

> The Resident/Representative and Facility hereby mutually agree to irrevocably waive any and all rights to trial by jury (while expressly preserving any and all rights to a bench trial) and forego any and all rights to claim for punitive damages in any action or proceeding arising out of or relating to this agreement, the transactions relating to its subject matter, or care and treatment provided to Resident at Facility. This agreement does not limit the ability of the Resident/Representative from filing formal and informal grievances with the Facility or state or federal government, including the right to challenge a proposed transfer or discharge.

Significantly, this condition and waiver is also stated on the page where Lightner, as Decedent's authorized representative, and Defendants' representative signed the Agreement for Decedent to be admitted. The Admission Agreement also incorporates by reference "all documents that You signed or received in the Admission Packet during the admission process to [the] FACILITY."

On and near the bottom of the signature page, the Arbitration Agreement in bolded, capitalized, and italicized text provides in pertinent part:

> ***THE PARTIES UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT, THE PARTIES ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.***

In *Rouse*, our Supreme Court considered and rejected an argument asserting a consent-to-jurisdiction clause and an arbitration clause in a single construction contract were "in irreconcilable conflict, as they both purport to establish the exclusive forum for resolution of disputes arising under the contract." *Rouse*, 331 N.C. at 92, 414 S.E.2d at 33. Our Supreme Court reasoned the parties had agreed to arbitrate any disagreement arising out of the contract, and the contractor had consented to the jurisdiction of North Carolina courts in the event of any litigation to enforce either the arbitration agreement or an award resulting from arbitration. *Id.* at 96-97, 414 S.E.2d at 35.

9

This Court has similarly construed the forum selection and arbitration clauses contained in a single contract to avoid conflict and asserted ambiguity between those provisions. *See Internet East, Inc. v. Duro Communications, Inc.*, 146 N.C. App. 401, 407, 553 S.E.2d 84, 88 (2001) ("The forum selection clause should be read to be triggered only when a court is needed to intervene for those judicial matters that arise from arbitration and when the parties have agreed to take a particular dispute to court instead of resolving it by arbitration."); *see also Tomaszewski v. St. Albans Operating Co., LLC*, No. 2:18-CV-01327, 2018 WL 5819601, at *4 (S.D. W. Va. Nov. 6, 2018) (an arbitration agreement "only changes the forum of the lawsuit.").

The majority's opinion disagrees with and fails to apply these precedents, and also fails to offer any factors or cases to distinguish them. The reasoning and precedents in *Neal*, *Leonard*, *Raper*, *Rouse*, and *Internet East* express and exhort how we are to review, construe, apply, and enforce the separate contracts before us.

Presuming the provisions contained in the separate agreements are ambiguous, the Admission Agreement and Arbitration Agreement may also be harmonized as were the provisions contained in a single contract in those precedents. The Admission Agreement expressly reserves both parties' right to a bench trial to adjudicate disputes, but excludes trial by jury and the recovery of punitive damages in the absence of an agreement to arbitrate.

B. Not a Condition of Admission

Defendants also assert an additional and equally harmonious reading of the two provisions in their appellate brief. The Arbitration Agreement clearly and emphatically states across the top of each page, including its signature page, that it is "**NOT A CONDITION OF ADMISSION – READ CAREFULLY**." Defendants argue the bench trial clause in the Admission Agreement simply applies if Decedent's authorized representative had rejected and declined to execute the Arbitration Agreement. Rejecting the Arbitration Agreement was without risk to Decedent's admission to the Facility.

Our Supreme Court has re-stated the "fundamental rule of contract construction that the courts construe an ambiguous contract in a manner that gives effect to all of its provisions, if the court is reasonably able to do so. Contract provisions should not be construed as conflicting unless no other reasonable interpretation is possible." *Rouse*, 331 N.C. at 94, 414 S.E.2d at 34 (citations, alterations, and internal quotation marks omitted).

The majority's opinion asserts without citing support, "the admission agreement's clause expressly reserving the right to a bench trial cannot be read in harmony with the arbitration agreement's clause expressly foreclosing the same." This conclusion is erroneous and does not follow the precedents set forth by our Supreme Court in *Rouse* and this Court in *Internet East*.

11

Decedent, through her authorized representative, expressly agreed to arbitration as the forum to resolve disputes between the parties. Defendants exercised their statutorily and contractually guaranteed right to have the parties' disputes resolved through arbitration. The trial court erred in denying Defendants' motion to compel arbitration and to stay the proceedings. *See Rouse*, 331 N.C. at 96-97, 414 S.E.2d at 35; *Internet East,* 146 N.C. App. at 407, 553 S.E.2d at 88. The trial court's unlawful order is properly reversed and remanded for entry of an order to compel arbitration as agreed and to stay proceedings pursuant to the Arbitration Agreement.

## IV. Fiduciary Duty to Decedent

The majority's opinion fails to address Defendants' second asserted error in the trial court's order. The trial court also apparently concluded Defendants owed a fiduciary duty of specialized care to Decedent.

> For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties. . . . In general terms, a fiduciary relation is said to exist wherever confidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence.

*King v. Bryant*, 369 N.C. 451, 464, 795 S.E.2d 340, 348-49 (citations, alterations, and internal quotation marks omitted), *cert. denied*, __ U.S. __, 199 L. Ed. 2d 233 (2017).

12

This Court recently stated: "North Carolina recognizes two types of fiduciary relationships: *de jure*, or those imposed by operation of law, and *de facto*, or those arising from the particular facts and circumstances constituting and surrounding the relationship." *Hager v. Smithfield E. Health Holdings, LLC*, __ N.C. App. __, __, 826 S.E.2d 567, 571, *disc. review denied*, 373 N.C. 253, 835 S.E.2d 446 (2019) (citation omitted). Although the trial court's order is unclear upon which basis it ruled, the only reasonable conclusion from the order is it concluded a *de facto* fiduciary relationship existed between Decedent and Defendants.

Our Supreme Court stated: "The list of relationships that we have held to be fiduciary in their very nature is a limited one, and we do not add to it lightly." *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 52, 790 S.E.2d 657, 660 (2016) (citation omitted). The physician-patient relationship is among the recognized *de jure* fiduciary relationships. *Hager*, __ N.C. App. at __, 826 S.E.2d at 572 (citing *Black v. Littlejohn*, 312 N.C. 626, 646, 325 S.E.2d 469, 482 (1985)).

This Court in *Hager* considered and rejected expanding a fiduciary duty "to include assisted living facilities with memory wards and their residents, as licensed memory wards possess special knowledge and skill concerning the care of those afflicted with cognitive impairments." *Id.* (citation, alteration, and internal quotation marks omitted).

13

This Court then considered whether a *de facto* fiduciary relationship existed. *Id.* Our Supreme Court's fact-specific analysis in *King* was reviewed for guidance. *Id.* In *King*, our Supreme Court concluded a *de facto* fiduciary physician-patient relationship existed because the patient:

> (1) was referred to the surgeon by his primary care physician, who already had a de jure fiduciary duty to the patient; (2) sought out the surgeon for his specialized skill and knowledge; (3) provided the surgeon with confidential information on arrival and prior to being seen; and (4) had received a limited education and had little to no experience interpreting legal documents.

*Id.* at __, 826 S.E.2d at 573 (citations and footnote omitted).

This Court in *Hager* applied the analysis from *King* to the facts before it. Significantly, in considering the fourth factor, the patient in *Hager*:

> was not asked to sign the Arbitration Agreement before she could evaluate the care offered by [the facility]; prior to signing the agreement, she toured the facility and was provided the opportunity to ask questions. She signed the agreement after assessing the facility with her friend . . . who also had the opportunity to offer her independent thoughts on the facility.

*Id.*

The Arbitration Agreement in this case is essentially identical to the one this Court upheld in *Hager*. *See id.* at __, 826 S.E.2d at 570. Both agreements contain the same capitalized, bolded, and italicized waiver of the right to trial by judge and jury, as well as the same bolded and underlined admonishment across the top of the page: "**NOT A CONDITION OF ADMISSION — READ CAREFULLY**". *Id.*

14

This Court in *Hager* concluded the language of these agreements "outlined the nature of arbitration, identified the rights [the patient] was relinquishing, and encouraged [his representative] to seek the advice of legal counsel before signing." *Id.* at __, 826 S.E.2d at 574.

The analysis in *Hager* is on point. As Decedent's condition debilitated, she required more specialized care than available at her previous assisted living residence. Her daughter was referred by a worker at that previous facility to the Facility for this higher specialized care. Like in *Hager*, Decedent's representative had the opportunity to and did perform her own due diligence by touring the Facility. In fact, Lightner had far *more* opportunity to perform her own due diligence than the patient's representative in *Hager*. Lightner toured the Facility a week before returning with Decedent, while the representative in *Hager* admitted her patient the same day following the tour. *Id.* at __, 826 S.E.2d at 569.

Considering both *Hager* and the factors our Supreme Court laid out in *King*, these facts align to those in *Hager,* which rejected any fiduciary duty. Defendants did not maintain or violate any fiduciary duty owed to Decedent. The trial court erred in concluding a fiduciary relationship existed between Decedent and Defendants.

## V. Conclusion

Plaintiff submitted evidence of an express and mutual Arbitration Agreement, signed by Defendants and Decedent's authorized representative. The law will not

15

relieve Plaintiff from her agreements, and the courts will enforce and compel her to honor and perform her obligations in a binding written contract. Plaintiff does not allege or show she did not understand the purport of the writing or, even if so, that she could not have informed herself prior to signing. *See Leonard*, 155 N.C. at 14, 70 S.E. at 1063.

By failing to apply four corners and *de novo* review as a matter of law, the majority's opinion erroneously construes the Admission Agreement and the separate Arbitration Agreement to be "internally in conflict with one another." This conclusion is: (1) contrary to the express terms of the parties' separate and private contracts; (2) contrary to the clear public policy of our nation and North Carolina favoring arbitration; and, (3) contrary to the fundamental rule of interpretation to avoid construing contract provisions as conflicting, unless no other reasonable interpretation can be applied.

The trial court also erred in concluding as a matter of law that a fiduciary relationship existed between Defendants and Decedent or her representative at admission. *See Hager*, __ N.C. App at __, 826 S.E.2d at 574. The trial court further erred by concluding as a matter of law Defendants had violated any fiduciary duty of care at the pre-admission relationship.

The parties are contractually and lawfully bound, and Defendants are entitled to resolve the parties' disputes through the forum of arbitration as agreed. It is the

16

duty of this Court to enforce the parties' private agreements. The trial court's erroneous order is properly reversed and remanded for entry of an order to compel arbitration and stay the proceedings. I respectfully dissent.